ARCHIBALD McCOLLUM *v.* IRA HINCKLEY, and AURELIA WILLIAMS, Executors of JESSE WILLIAMS, and LYMAN WILLIAMS.

Debts, not presented to the commissioners on insolvent estates, are barred, whether the creditors reside within the State or not.

If a creditor of such estate, with surety, refuse to present his claim to the commissioners for adjustment, when requested so to do, by the surety, the surety will be released from his liability.

But where he applies to a court of Chancery, before the suit is brought, as he may do, to be released from his obligation on such debt, and it appears that such estate would not have paid the whole debt, the court will require the surety to pay into court, for the benefit of the creditors, the deficiency, out of which the surety will be permitted to deduct his costs, and the balance, if any, be paid to the creditor.

If the creditor, by mere negligence fail to present his claim to the commissioners in time, so that he loses his remedy against the estate, the estate being in fact solvent, it would seem, he could not afterwards recover of the surety.

At all events, chancery will not interfere in his behalf, to enable him to obtain a decree against the estate, on the ground of the primary liability of the surety, and the ultimate liability of the estate. Such possibility of action, in the surety, if it exist, not being one of those trusts, which the creditor can compel him to surrender to his use.

The bill, in this case, alleges in substance, that Jesse Williams, in his life time, was indebted to the orator in a considerable sum, for which he executed his promissory note, and procured his son, Lyman Williams, to sign with him, as surety. Jesse Williams deceased, his estate was represented insolvent, commissioners were appointed, and the orator, residing in the Province of Lower Canada, had no notice, in fact, of the proceedings, and did not present his claim. The commission was closed. The estate proved sufficent to pay the debts, including the orator's, and assets remain in the hands of the Executors, sufficient for that purpose. The defendants, the executors. answered, and the bill was taken "*as confessed,*" against Lyman Williams. The case was heard on bill, answer and traverse, and the court considered the facts above alleged, as set forth in the bill, as substantially found in the case, and it was considered and decided accordingly.

*Smalley & Adams, for orators.*

The surety, Lyman Williams, may either pay the money and then bring his action at law against the executors, to compel a payment of the claim, or, without paying the money, he. may

Franklin,
January,
1837.

McCollum
v.
Hinckley.
and Others.

bring his bill in this court, and compel the executors to discharge it, before he has been called on for payment. Law Library, 1 Vol. 135.

This estate, therefore, being ultimately and indirectly liable for the payment of the debt, this court will, on the well established principle of preventing a circuity of action, interfere, and compel the payment of the same, directly from the executors to the orator. Francis' Maxims, 36. *Riddle & Co.* v. *Mandeville and Jamesson*, 2 U. S. Cond. Rep. 268.

Though the orator's claim upon the estate of Jesse Williams is barred at law, yet as the surety has a lien upon the estate in in the hands of the executors, the orator is at liberty to avail himself of the surety's lien upon this fund, to compel payment of his debts, upon the principle that the creditors shall have the benefit of all counter or collateral securities, given by the principal to the surety. *Maure* v. *Harrison*, 1 Bridg. 299. Eq. Abr. 93. *Wright* v. *Morley, and Morley* v. *St. Albans*, 11 Ves. 22. 3 Bac. Abr. 701. 1 L. L. 151.

The rule that the surety shall have the benefit of all the securities, taken by the creditor, and that the creditor shall have the benefit of all the securities taken by the surety, is reciprocal. See cases above cited.

*John Smith, for defendants.*

It is a well settled rule in Chancery, that, in cases of contract, equity will relieve against forfeitures, introduced by the parties, but when created by statute, or when arising from the breach of conditions in law, no relief can be given. 2 Swift's Dig. 16. 1 Ball & Beatty, 47. 373.

The section of the statute referred to is as binding on *this court*, as it is on a court of law, and a court of equity can no more relieve against it, than they can against the statute of limitations, or the provisions of the statute in relation to usurious contracts. The fact, alleged by the orator in his bill, that he resided in the province of Canada, was ignorant of the laws of this State, and had no notice of the sitting of the commissioners, if true, could not operate to exempt him from the provisions of the statute. The orator, as well as every other person, is bound to know the statute, and is, in all cases, presumed to have notice, when the commissioners have given such a notice as the law required.

The orator has an adequate remedy at law, for the recovery

of his debt.   Lyman Williams, one of the signers of the note, for any thing that appears, is solvent, and able to pay the amount of said note.

But if it be true, that Lyman Williams was, at the commencement of this suit, a bankrupt, still, this court, cannot, on that account, now charge the estate of Jesse Williams with the payment of the demand set forth in the orator's bill.

If Lyman Williams had signed the note, as surety for Jesse Williams, and had given him collateral security, and both of them were insolvent, then the orator, if his claim was not barred, might be entitled to the benefit of such collateral security.

In the case of *Homer* v. *Savings Bank*, 7 Conn. Rep. 484, the court say, that the principle, to be extracted from all the cases on this subject, is this, that when collateral security is given, or property assigned *for the better protection or payment of a debt*, it shall be made effectual for that purpose, and that, not only to the immediate party to the security, but to others, who are entitled to the debt.   And the reason is, that such is the intent of the transaction.   " They are trusts," says chancellor Kent, " executed for the better protection of the debt, and a court of Chancery will see that they fulfil their design."

The present case does not come within either the letter or spirit of the principle above stated.   In this case there was no collateral security given on the part of Jesse Williams.   There is no *trust fund* appropriated for the payment of this demand. But if there were collateral security given, the court could appropriate it to the payment of this debt, only in the event of the insolvency of the estate of Jesse Williams.   For if that estate is solvent, and it surely is, then the orator has, or, but for his own neglect, might have had an ample remedy at law.

If Lyman Williams signed the note, *as surety* for Jesse Williams, he ought to be regarded in equity as an indorser.   If so, then, not only is the estate of Jesse Williams discharged from the payment of this debt, but so is Lyman Williams, the indorser.   If the orator has, by his own neglect, lost his remedy against the principal, then surely he can have no claim on the surety.

But if Lyman Williams is not discharged from his liability to pay this demand to the orator, still it is contended that there is no rule of law or equity, which would authorise this court to

Franklin,
January,
1837.

McCollum
v.
Hinckley and
Others.

decree the payment of this debt to the orator, on the ground that Lyman Williams may, by possibility, hereafter have a claim against the estate of Jesse Williams. Nor can the court, in this suit, undertake to settle the rights between Lyman Williams and the estate of Jesse Williams. The court are not advised how much of the orator's claim belongs to Lyman Williams to pay, nor what claims the estate of Jesse Williams may have against him, which would be a set-off, in case Lyman Williams should pay the whole demand, and assert a claim against the estate on that account.

The opinion of the court was delivered by

REDFIELD, Chancellor. The orator's claim at law, directly against the estate of Jesse Williams, is most undeniably barred. No principle is better established, than that claims *in esse*, not presented to commissioners of insolvency, are barred from being ever after asserted against the insolvent or his estate, within that jurisdiction, whether the creditor resided within the jurisdiction or not. Debts, depending upon a contingency, not happening before the close of the commission, are, of necessity, excepted from the operation of this statutory bar. Indeed, it is necessary for the orator to concede this, as a starting point, in order to get rid of another objection, which he might find formidable : i. e. that he now has a perfect remedy at law.

But the orator claims the interference of this court, on the ground that the surety is still liable, and, being so, might bring his bill to compel payment out of the assets in the hands of the executors, in the first instance.

If the doctrine in the case of *Hunt* v. *Fay, admr. of Gookin*, 7 Vt. Rep. 170, is to be considered as applicable to this case, and it is difficult to distinguish the cases, then not only is the orator's remedy gone, but his debt also is extinguished. And if the debt of the orator is to be holden so far extinguished, that it could not be any where asserted against the estate of the principal, found in another jurisdiction, it is difficult to perceive how the surety can be held any longer liable.

It is well settled, that if the creditor do any act, by which he is prevented from pursuing the principal, for ever so short a time, the surety is thereby released. In the language of some of the cases, "if he ties up his own hands," he thereby releases the surety. And it must be apparent to every one, that, *a fortiori*, the doing an act, which *releases* the principal, will release the

surety. And we find no case, when the creditor has, by his own act, even permissively released the principal, where he has been allowed to pursue the surety. It is said this is the case in relation to debts not presented to commissioners and assignees of insolvent and bankrupt estates in England, and it may be so; but I find no case to that effect. If such a rule exists, it is one of policy, and less applicable to the present case, than to the subject, from which it is derived. Policy here would seem to require, that the creditor should not be permitted to pursue a known surety, after he has lain by, and suffered the estate of the principal to be distributed, without presenting his claim. This would be a *practical* fraud upon the surety, by which he ought not to suffer. The creditor is legally affected with notice of the commission, and is, in fact, much more likely to have notice of it, than the surety. He is bound, in good conscience, and in *equity*, to exhaust all remedies against the principal, before resorting to the surety; and in law, even, he is bound not to *release* any of his remedies against the principal, except at the peril of exonerating the surety. And we think it no hardship to require the creditor to present his claim to the commissioners of the the estate of the principal, and obtain whatever the estate may pay.

During the last week, in Chittenden county, a case came before the court, which may be considered as having an important bearing upon the present. As that case will not be reported, elsewhere, I may be permitted, on account of its similarity to the present, to state its details.

It was a bill in Chancery, brought by Joseph Clark, against Roderick D. Hill and Warren Hill, praying to be released from a note, which the defendants held against him, under the following circumstances. The note was signed by the orator, as surety for Bascom and Woodman. Bascom was deceased, and Woodman insolvent. The estate of Bascom being represented insolvent, and commissioners appointed, the creditors refused to present the claim, and by pretending to have mislaid the note, and refusing a tender of the amount due them in bills, prevented the claim being allowed, either in favor of the orator or the defendants. The estate of Bascom proved, in fact, insolvent, the dividend amounting to little more than half the sum due. It was then urged that the surety was not exonerated, and that if he were, the bill was premature, as the defendants might never

*Franklin,*
*January*
1837.

McCollum
*v.*
Hinckley and
Others.

Franklin,
January,
1837.

McCollum
v.
Hinckley and
Others.

attempt to enforce the note against him. But the court held clearly upon both points for the orator.

1. That such evasion and subterfuge, on the part of the creditors, as had prevented the debt from being allowed by the commissioners, was a substantial fraud upon the orator, by which the creditors had made the debt their own, and, at law, would be prevented from recovering any part of it, although, in equity, still entitled to so much of the debt as would not, in any event, have been obtained from the principals.

2. That the surety was not obliged to lie by and trust the will of the creditors, whether they would attempt to enforce the note against him, or, if they did, risk the continuance of the testimony, necessary for his defence, but might resort to a court of equity, to compel the surrender and discharge of the note; but if he elected this course, he could not enforce the forfeiture and compel the creditor to forego his claim upon the orator, until he paid him the amount really his due, (as is required in the case of a bill brought to discover usury) the orator deducting his costs therefrom. And the court decreed accordingly.

The case now under consideration is not the same with that just referred to. In that case, the creditor refused to present the claim, and took *active* means to prevent its being presented. In this, the creditor merely neglects to present the claim, whereby his debt, as against the estate of the principal, is released or barred. We think sound policy would require, that the surety should be released from his obligation, to the amount which might have been realized out of the estate of the principal, and where there is *actual fraud*, that at law, he should be wholly released.

But if it be conceded, that the orator may still pursue the surety at law, it is evident that his liability is brought in here as a *fulcrum* merely, to enable the orator to reach, indirectly, the estate of Jesse Williams, and thus substantially to avoid the operation of the statutory bar. We should always be ready to march directly up to the object which we would attain, and this is done, in some sense, to avoid circuity of action. But it was never before heard, that a court of chancery would adopt a *circum-gyration* in motion, in order to come at that indirectly, which they otherwise could not reach, and thus virtually repeal a positive statute.

The attempt to compare this, to the case of a surety, who has

a lien upon property, or other collateral security for the debt, is rather *ingenious*, than *ingenuous*, as it seems to us. There is, in some sense, an analogy, but with such specific differences in some particulars, as not to make the one a rule of decision for the other.

It is a familiar principle of equity jurisprudence, that the creditor may compel the surety to surrender to him any peculiar means, which may have been entrusted to him by the principal, for the purpose of securing the payment of the debt. Hence, he may be compelled to assign a mortgage, upon personal or real property, or any specific lien, given him by the principal, to secure the payment of the debt. And the same is true of any collateral remedy which the surety may hold. And in like manner, the surety may compel the creditor to assign to him, on payment of the debt, any collateral remedy he may have, to secure the payment. And if the creditor parts with these collateral remedies to the prejudice of the surety, and without his consent, the surety is no longer liable. But it was never supposed that the surety could be compelled to stand as a mere stepping stone between the creditor and principal, in order to revive a cause of action, which he had lost by his own neglect. This does not seem to be one of those rights, which the creditor can claim of the surety. This is a right merely *dependent* upon the recovery of the creditor. But those rights, which the creditor has a claim upon, for the purpose of compelling payment of the debt, are all independent, and distinct from the rights of the creditor. The doctrine of subrogation and substitution, between creditor and surety, is familiar and undeniable, but bearing no just analogy to the remedy here sought.

A case might be supposed, in which the cause of action might be barred by the statute of limitations, as to the principal, while the surety might not be able to make the defence available. And if such a case should occur, could it be argued that a bill in chancery would relieve the creditor from the consequences of his own *laches?* The present case is one not very different, in principle, from the one supposed.

The case, relied upon by the counsel for the orator, *Riddle & Co. v. Mandeville & Jamesson,* 2 Peters', Cond. Rep. 268, is not an authority for the present. That there is some analogy between the principle there decided, and the one here contended for, is doubtless true.

Franklin,
January,
1837.

McCollum
v.
Hinckley and
Others

By a statute of the State of Virginia, under which that case arose, the indorser of a promissory note is only liable to his immediate indorsee, and not to a secondary indorsee, as at common law. The policy of such a statute is not very obvious. And the doctrine of the case, referred to, looks, not a little, like an attempt to evade the injustice sometimes unexpectledly following improvident legislation. The court there permitted a remote indorsee to recover of the first endorser, the maker of the note having avoided payment, and the intermediate indorsers being insolvent, on the ground, as is presumed, that each subsequent indorsee looked to the credit of all the previous indorsers, and was, in equity, entitled to their responsibility, which might be ultimately reached through a succession of suits. That was a bill in equity, and decided upon the ground that equity will make the party, ultimately liable, liable in the first instance.

Aside from the consideration, that the doctrine seems to result from the *necessity* of the case, it is observable that the orator had been guilty of no *laches* on his part, from which he sought to be relieved ; that a perfect cause of action did, in fact, exist, against the remote endorser, upon the failure of the maker of the note to make payment, and that the identical money, for which the defendants were liable, was to go into the hands of the orators, through other endorsers, who were mere trustees, for the benefit of the orators. It became, then, strictly, a case for the interference of a court of equity, to substitute the *cestui que trust*, in the place of the trustee. But no right of action, in favor of the surety against the principal exists, until after the payment made by him, which, in this case, was not likely soon to be the fact ; how then could it be said, that the surety holds a remedy in trust for the creditor, when no such remedy exists, or in the common course of events is likely soon to occur ?

What is said of the will in this case, or the law in old cases, making the debts a charge upon the property, will not aid the orator. The debts are a charge upon the property only in a legal mode, and while these debts exist. The debt against the estate, in favor of the orator, was lost, and that in favor of the surety never existed. In either view of the case, we think the bill must be dismissed, and decree accordingly.