NELSON DICKEY *v.* A. S. CORLISS, ADMINISTRATOR OF REUBEN. PAGE.

[IN CHANCERY.]

*Commissioners.   Creditor.   Chancery.   Probate Court.*

Where the creditor of an estate presents his claim to the commissioners appointed by the probate court, for allowance against the estate, it becomes the duty of the commissioners to take cognizance of the claim, to act upon it, and to include it and their action on it in their report to the probate court.

Where the creditor has duly presented his claim to the commissioners, and they intimate nothing to him adverse to its allowance, and the administrator makes no defense or objection, the creditor is justified in resting in the belief that his claim was allowed.

Where commissioners, without the fault of the creditor, have failed to report to the probate court, a claim duly presented before them for allowance, it is the province of the court of equity to save the creditor from his impending loss, by holding the estate still bound to do what the law would compel it to do but for the omission of the commissioners to do their duty; and in this respect the court of equity will be occupying its own peculiar province, and not assuming that of the probate court.

BILL IN CHANCERY. The facts set up in this bill, sufficiently appear in the opinion of the court. The defendant filed a general

demurrer, which was *pro forma* sustained by PECK, Chancellor, at the December term, 1867, of the court of chancery, and the bill dismissed with costs, from which the orator appealed.

*A. M. Dickey*, for the orator.

*C. W. Clarke*, for the defendant.

The opinion of the court was delivered by

BARRETT, J.   This is an appeal from a *pro forma* decree of the court of chancery sustaining a demurrer to a bill.   The ground and substance of the bill are that the orator held two valid notes made by the firm of Johnson & Page, at the time that Page died, in March, 1863; that Johnson and the firm were insolvent, and Page left ample property; that the orator duly presented said notes to the commissioners on Page's estate for allowance against said estate, and they examined them and returned them to the orator, who received them and has kept them ever since; that no defense or objection was made by the administrator or any one else to their allowance; that the orator had good reason to believe, and did believe, that the notes were allowed against said estate, till some time in April, 1867; that he is informed and believes that the commissioners intended to allow them, and supposed they had till long after the time provided by statute for opening the commission, etc., had elapsed; that the commissioners made and returned their report to the probate court, and the same was accepted and ordered to be recorded; that said report does not show that either of said notes was presented to, or acted on, by said commissioners; that the orator is informed and believes that the reason of their not being included and allowed by the commissioners in their report, is that they, by mistake, neglected and forgot to minute the same as allowed by them, and that they intended to allow them, but did not allow them in their report nor disallow them.

Then follow other things in the bill, to show the danger the orator is in of losing his debt, unless helped by the court.

The leading and important question is whether, upon the substance of the case, a court of equity may legitimately grant relief; for it is agreed that no other court can.

It is important to have in mind certain leading facts. The orator had a valid, absolute claim, by virtue of those notes, against said estate. He presented the notes, as constituting such claim, to the commissioners. No defense or objection was made to their being allowed. He was entitled to have them allowed, and, upon those facts, it was the duty of the commissioners to allow them. It is to be assumed that the notes appeared to be properly executed. That being so, a case was made, in law, entitling the orator to have them allowed. On being presented for allowance, it became the duty of the commissioners to take cognizance of the claim, to act upon it, and to include it and their action on it in their report to the probate court. When thus presented to and examined by the commissioners, the orator had done all that was incumbent on him to do in order to fix the duty on the commissioners to act upon the claim. As they intimated nothing to him adverse to its allowance, and as the administrator made no defense or objection, we think the orator was fully warranted in assuming and believing, and in resting in the belief, that the claim was allowed. If it had been allowed, he would have had nothing further to do, till the time should come for him to receive his pay under some proper order of the probate court. As he was warranted in believing that the claim had been allowed, of course he would act in the same manner as if it had been, in fact, allowed. And it can not be imputed to him as fault or neglect, that he did so act. The length of time that he rested under that false belief, can not affect the case, in the absence of any occasion for him to do anything till the time for receiving his pay should arrive. He had the right to presume that the commissioners would do their duty as prescribed by the law, in respect to the making up and return of their report to the probate court, and he was not called on to supervise and see that it was correctly done.

We think, therefore, that the orator can not be charged with any fault or neglect in respect to presenting his claim, or in believing,

9

and resting in the belief, that his claim had been allowed and so reported to the probate court, or in awaiting, without further action or concern, the payment of his claim in due course of settling and closing up the estate.

It, therefore, becomes important to inquire whether, for the omission of the commissioners, through their own mistake or forgetfulness, to do what the law imposed upon them as a duty in order to constitute an adjudication and establishing of the orator's claim, he is entitled to the aid of a court of equity to save him from the impending loss of his debt, a debt which Page in his lifetime was legally liable to pay, even in the equitable action for money had and received, and which his estate would be bound to pay but for that mistake and forgetfulness of the commissioners.

The matter of accidents and mistakes, which obstruct the enforcement of legal rights by the ordinary course of the courts of law, constitutes one of the original, and one of the most salutary functions of a court of equity ; and it seems to us that this case is a strong illustration of the need and usefulness of such a court in this respect. The debt and duty of Page was not discharged by him, nor has it been by his estate. It is claimed that the estate is discharged from it by the neglect of the commissioners to do what the law prescribed as their duty, and what the orator had the right to believe, and rest in the belief, that they had done, and what, if they had done it, would have compelled the estate to pay that debt. This, we think, is not tenable. Our views could be illustrated by very many cases, and the principles on which they rest are fully set forth in the text-books. 1 Story Eq. Jurisp., § 78. "Accident is such unforeseen events, misfortunes, losses, acts, or omissions, as are not the result of any negligence or misconduct of the party." *Ib.*, § 79, § 105.

The present case is not like *Burton* v. *Wiley*, 26 Vt., 430, nor like *Pettes et al.* v. *Bank of Whitehall*, 17 Vt., 435, nor like *Emerson* v. *Udall*, 13 Vt., 477.

Nor does it fall within the principle and reason of the decision in *McCollum* v. *Hinckley et al.*, 9 Vt., 143. In that case the claim had not been presented at all before the commissioners, and there-

fore was subjected to the statute by which a debt was extinguished by lapse of a time limited. The same is to be said of *Burgess* v. *Gates, executrix,* 20 Vt., 326, in which the claim was not presented at all. In the present case it was duly presented. We think, therefore, that it is the province of the court of equity to save the orator from his impending loss, by holding the estate still bound to do what the law would compel it to do but for the omission of the commissioners to do their duty as prescribed by the statute. In this respect, a court of equity will not be assuming the province of the probate court, but will be occupying its own peculiar province, where the probate court, through the inadvertence of one of its branches, has failed to act at all upon the matter.

Various causes of demurrer have been assigned *ore tenus*, mainly of a technical character, which, we think, can be easily obviated by amendment, if occasion should be thought to exist. We are disposed to give the case a course that will enable the orator to put himself, with technical propriety, upon the record.

We reverse the decree on condition that the orator shall pay the defendant's costs in this court, and remand the case, with the recommendation that the orator be allowed to amend the bill, and then the case to proceed in due course.