VERMONT-PEOPLES' NATIONAL BANK v. ALICE W. ROBBINS' ESTATE.

February Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

284

*Frank E. Barber* and *Ernest W. Gibson, Jr.,* for the plaintiff.

*Herbert G. Barber* for the defendant.

POWERS, C. J. C. O. Robbins and Dennison Cowles, under the firm name Robbins & Cowles, carried on a partnership business in Brattleboro for a long time prior to January 1, 1918. The firm did its banking business with the Peoples' National Bank, and from time to time borrowed money therefrom. On or about the date mentioned, the members of the firm formed a corporation under the name Robbins & Cowles, Inc., and the business continued under the same ownership and management. The corporation assumed the bank debts of the partnership, and on September 15, 1918, to cover such debts, it gave the Peoples' National Bank a four months' joint note for $10,000 signed by the corporation and by C. O. Robbins and Dennison Cowles. On the face of this note, the individual signers were joint makers, but in fact the note was given for the sole benefit of the corporation. All this was known to the bank when the note was taken. The Peoples' National Bank was afterwards consolidated with the Vermont National Bank under the name Vermont-Peoples' National Bank, and the note passed into the hands and became the property of the new corporation. On October 18, 1918, C. O. Robbins died testate. His widow, Alice W. Robbins, was the executrix of his estate. Commissioners were appointed and this $10,000 note, then overdue and unpaid, was presented to them. The commissioners allowed the note by indorsing on it the word "approved" over their signatures, and returned it to the plaintiff. When the commissioners made their report to the probate court for the district of Marlboro, wherein the estate was being settled, this note was therein characterized as a contingent claim. The plaintiff, understanding that the note was allowed as an absolute debt, did nothing toward its enforcement until after Mrs. Robbins' death as hereinafter recorded. It took from the corporation, from time to time, renewal notes, but not in payment of this note which it never surrendered, nor did it ever intend to release the signers of it.

Mrs. Robbins proceeded with the administration of her husband's estate, paid or settled all the other claims allowed against it, but paid nothing on the $10,000 note here involved. Each year she filed her account with the probate court and the same was examined and allowed. These reports showed the payments

made on the claims proved and her other charges and expenditures. On December 6, 1928, she filed her final account which was also examined and allowed, and the probate court thereupon decreed to her the rest and residue of the C. O. Robbins estate, the value of which was $968.08. This final account made no reference to the note in question, nor did any of the annual accounts. As the probate records stood, it was wholly ignored and left undisposed of. No notice of the hearings on any of these accounts, annual or final, was given to the plaintiff by publication or otherwise, and it knew nothing of them until after the death of Mrs. Robbins, which occurred on April 16, 1930—over a year after the Robbins estate was closed on the books of the probate court. During the time she was acting as executrix, Mrs. Robbins received from the estate, under an order of the probate court·made December 2, 1918, an allowance for her support of $100 per month, which amounted in all to $5,533. ·During this time, on numerous occasions, Mrs. Robbins called at the bank, and talked with the assistant cashier about this note; and she frequently went to the store of Robbins & Cowles, Inc., and talked with Mr. Cowles about their paying the note so that she could close her husband's estate. But she did not disclose to the bank that the note was allowed as a contingent claim, and, perhaps, was under no obligation to do. so. But she left the bank with the impression that the estate was holden for the note. And the plaintiff was, in fact, misled into allowing the matter to drift along until it was too late to save itself. The probate court never made an order requiring the administratrix to pay this note or any of the other allowances.

The plaintiff brings this bill in chancery claiming that it should recover the whole amount of the $10,000 note, less the amounts paid on the renewal notes amounting to $1,100. The defendant demurred to the bill, and excepted to the chancellor's adverse ruling thereon—the benefit of which exception was saved by order of the chancellor. *Fairbanks* v. *Keiser*, 86 Vt. 210, 213, 84 Atl. 610. The chancellor then heard the case on its merits, filed his findings to the effect above stated, and thereupon rendered a decree for the plaintiff for the above sum of $968.08, with interest thereon from December 6, 1928, and costs. Both parties appealed.

Neither the indorsement made by the commissioners on the back of the note, nor the allowance of the claim evi-

denced thereby amounted to a judgment thereon. The things that count in such matters are the report made to the probate court and its acceptance by that court. Not until such acceptance was indorsed thereon or otherwise evidenced did the action of the commissioners become a judgment. *Hodges, Exr.* v. *Thacher,* 23 Vt. 455, 464; *Adarene* v. *Marlow's Estate,* 33 Vt. 558, 559; *Riley* v. *McInlear's Estate,* 61 Vt. 254, 261, 17 Atl. 729; *Sowles* v. *Quinn,* 61 Vt. 354, 356, 17 Atl. 493. The judgment actually rendered, then, established this claim as contingent. But it was wholly unwarranted. There was nothing contingent about it. "Contingent" implies futurity. It properly applies to a claim that may never become absolute; but not to one that has already become absolute. A contingent claim under G. L. 3390 is one "where the liability depends upon some future event which may or may not happen, and therefore makes it more wholly uncertain whether there ever will be a liability." *Sargent's Admr.* v. *Kimball's Admr.,* 37 Vt. 320, 321. It must be one that "cannot be proved as a debt before the commissioners." This note was nothing of this kind. It was a fixed liability and could be proved as a debt.

 The obligation of a surety is measured by his contract. *Standard Oil Co.* v. *National Surety Co.,* 234 Ky. 764, 767, 29 S. W. (2d) 29; *Ryan* v. *Shannahan,* 209 Cal. 98, 285 Pac. 1045, 1046; *Gordon & Delworth, Inc.* v. *Abbott,* 258 Mass. 35, 154 N. E. 523, 524. So the fact that Robbins was a surety on this note did not affect his primary liability to the plaintiff, but only shows the relation of the makers to each other. *East Bridgewater Savings Bank* v. *Bates,* 191 Mass. 110, 77 N. E. 711, 712. In the hands of the bank the note was the joint note of the signers. Upon the death of Robbins, by force of the statute, G. L. 3303, *Hogan & Hogan* v. *Sullivan,* 79 Vt. 36, 39, 64 Atl. 234, it became a valid and absolute claim against his estate. It was, therefore, the duty of the commissioners to allow it as such, and they had no right to allow it as anything else. Their report was wholly unwarranted. As we have seen, the court never made an order for the payment of the claims allowed. It is quite probable that its approval of the annual accounts would amount to the same thing as a previous order to pay, as to all claims shown thereby to have been paid in whole or in part. But this claim was not mentioned therein. So it is apparent that in the absence of such an order, *Bank* v. *Kidder,*

20 Vt. 519, 523, or subsequent approval, the executrix could not be pursued in the probate court or elsewhere in proceedings at law. The plaintiff cannot now reopen the commission to have the mistake of the commissioners corrected, or proceed to perfect his claim as a contingent one. The final decree, having been made without compliance with G. L. 3276 as to notice, is, to be sure, without force. *Bioni* v. *Haselton,* 99 Vt. 453, 459, 134 Atl. 606; *In re Allen,* 82 Vt. 365, 380, 73 Atl. 1076, 26 L. R. A. (N. S.) 232. But it would do this plaintiff no good to go to the probate court for a new decree for the record would be against it.

It is quite true that equity will not interfere here unless there is found in the record a strictly equitable claim. For the jurisdiction of the probate court in the settlement of estates is absolute and exclusive as to all claims of an absolute or legal nature, and the court of chancery only aids the probate court in regard to strictly equitable matters. *Goff* v. *Robinson,* 60 Vt. 633, 641, 15 Atl. 339. But as was said in *Dickey* v. *Corliss,* 41 Vt. 127, 130, "the matter of accident and mistakes, which obstruct the enforcement of legal rights by the ordinary course of the courts of law, constitutes one of the original, and one of the most salutary functions of a court of equity." We think this case comes within the spirit of that one. There, the plaintiff presented partnership notes to the commissioners on the estate of one of the partners. The commissioners examined them and returned them to the plaintiff. They did not signify any objection to their allowance, nor did the administrator object thereto. The commissioners failed to include the notes in their report, which was duly filed and allowed. The plaintiff, believing that they were properly allowed, did nothing until it was too late to get the commission reissued.

It was held, in effect, that the responsibility for the situation in which the plaintiff found himself was with the commissioners and that he was not chargeable with fault or neglect; that he had a right to presume that the commissioners would do their duty as prescribed by law in making up and filing their report; and that he was not called upon to supervise this work or to see that it was correctly done. It was further held that the plaintiff was entitled to the aid of a court of equity to save himself from the impending loss of his debt. This case was approved by this Court in *Freeman* v. *Holt,* 51 Vt. 538, 543,

wherein Judge Ross says that it presented a case of "mistake or inadvertence of the commissioners, and not of the neglect of the orator." *Dickey* v. *Corliss* was again approved and its doctrine applied in *Batchelder* v. *White's Admr.*, 82 Vt. 132, 135, 71 Atl. 1111. In that case the orator presented to the commissioners of White's estate, a statement of a note signed by White. It was held that this was a sufficient exhibit of the claim evidenced by the note; and that since the commissioners failed to include it in their report and his statutory remedies had expired without his fault, the plaintiff was entitled to a remedy in chancery.

On the authority of these cases, we hold that the plaintiff has established his right to a remedy in chancery.

██ ██ Of the demurrer, little need be said. No question of laches is raised by it, as we have repeatedly held. Our last case is *Fenwick* v. *Sullivan*, 102 Vt. 28, 32, 145 Atl. 258. Nor is that question before us on the findings; for the burden of proof was on the defendant, *Bufton* v. *Crane*, 101 Vt. 276, 281, 143 Atl. 382, and he has not procured the necessary findings.

██ But the plaintiff is not necessarily entitled to the whole of its claim. The executrix apparently acted in good faith, relying upon the advice of the probate judge. Neither she nor her estate should be penalized. All that the plaintiff can fairly claim is so much as a ratable division of the available assets among all the creditors would have given it. This sum is not shown by the record. So the case will have to be remanded for a determination of it.

*Decree reversed, pro forma, and cause remanded. Let the amount to which the plaintiff as a creditor for the amount unpaid on the $10,000 note would have been entitled on a pro rata division among all the creditors of the available funds of the estate of C. O. Robbins be determined. And if the plaintiff has already received from said estate more than its pro rata share of such funds on other debts proved against said estate, let such excess be deducted from the amount first mentioned. Let the plaintiff have a decree for the amount so determined with costs in the court of chancery. No costs are awarded in this Court.*