Jones *et ux. v.* Darnall.

Filed Nov. 17, 1885.

———————◆———————

No. 12,253.

JONES ET UX. *v.* DARNALL.

HABEAS CORPUS.—*Custody of Infant.*—*Interest of Child Paramount Consideration.*—In a *habeas corpus* proceeding by a father to obtain the custody of his infant child from its maternal grandparents, the welfare of such child is the paramount consideration, and the order of the court must be made accordingly.

SAME.—*Supreme Court.*—*Weight of Evidence.*—*Exception to Rule.*—When a *habeas corpus* case is before the Supreme Court on the evidence, the sufficiency of such evidence to sustain the finding will be passed upon.

From the Montgomery Circuit Court.

*G. W. Paul, J. E. Humphries, P. S. Kennedy, S. C. Kennedy* and *W. Reeves,* for appellants.

*A. D. Thomas* and *W. J. Darnall,* for appellee.

HOWK, J.—This was a *habeas corpus* proceeding instituted by the appellee, Darnall, to obtain the custody of his infant son, Arthur J. Darnall, from the appellants, Jones and wife, who were the maternal grandparents of such infant.   A writ of *habeas corpus* was duly issued, to which the appellants made return in writing, wherein they admitted that they were then in possession of Arthur J. Darnall, the infant son of the appellee and Susanna Belle Darnall, then deceased; but they said that Susanna Belle Darnall died about the 22d day of October, 1884; that appellee's infant son was born on the 28th day of September, 1884; that when Susanna Belle Darnall died, the appellee had no home for his infant son; that before appellee's wife died she requested her mother, one of the appellants, to take and raise such infant child; that appellants were in good circumstances, and were capable of raising such child; that soon after the death of his wife the appellee asked the appellants to take such child and raise it the same as their own child; that they said to him, they were afraid that after they had taken the child and become attached to it, he would want to take it away from them and give them trouble about the child; that the appellee then gave his word to appellants that he would never take the child from them, and upon his promise and agreement with them, they agreed to take and care for such child; that, with the full consent of appellee and at the dying request of their daughter, Susanna Darnall, and under the facts stated, the appellants took such child and had taken care of him, and his grandmother had given him the same care and attention she would have given her own child; that such child had to be fed with a spoon, and appellants got up in the night and fed and cared for him; that they had become attached to the child, and felt almost as near to it as they would if it were

their own child; that they were willing the appellee might visit his child, and would treat him friendly and would teach the child to love and respect its parents; that appellee gave such child to appellants, and promised he would never take it away from them, and surrendered to them the care and possession of the child; that they had a good home for the child, and were willing and able to care for, support and maintain such child, and would treat him the same as their own child.

Appellants further said, that the appellee had no wife and no family, and worked by the month and went from place to place, and had no way to take care of such child; that appellee had no property, and since the death of his wife he had been drunk and at times used intoxicating liquor, and had a very violent temper; that the child then had a good and comfortable home with kind and affectionate grandparents, who were of good habits and were fit and proper persons to have control, care and custody of such child; that it was for the best interests of such child to be left with the appellants; and that the appellee, in his then condition in life, was not a fit and proper person to take charge of such child.

Appellee replied by a general denial to appellants' return, and, upon a hearing then had, the court found for the appellee. Over appellants' motion for a new trial, the court rendered judgment awarding the custody of the child to its father, the appellee.

In this court, the only error relied upon, in argument, for the reversal of the judgment below, is the overruling of the motion for a new trial. In this motion, the only causes assigned for such new trial or hearing were such as question the sufficiency of the evidence to sustain the finding and judgment below.

Appellants' counsel first insist very earnestly that the evidence showed an absolute gift by the appellee of his child to the appellants, which he could not afterwards revoke, rescind or annul, so as to entitle him to reclaim the custody

and possession of the child from them. It may be fairly said, we think, that there is evidence in the record which tends, at least, to sustain the material facts stated by the appellants in their return to the writ, the substance of which return we have heretofore given. But as to some of these facts the evidence was conflicting; and it was the province of the circuit court to settle this conflict, and to determine which of the witnesses were the more worthy of belief. This court will not weigh evidence as a general rule, nor attempt to determine its preponderance. Considering all the evidence in the record, we may say, however, that it fails to show an absolute and unconditional gift by the appellee of his infant child to the appellants, or any intention on his part to yield or surrender to them his rights as a father to the custody and possession of the person of his child for any definite period of time.

In section 2518, R. S. 1881, in force since May 6th, 1853, after declaring that the guardian of an infant shall have the custody and tuition of such minor, and the management of such minor's estate, there follows this proviso : "*Provided,* That the father of such minor (or, if there be no father, the mother, if suitable persons respectively) shall have the custody of the person and the control of the education of such minor." On behalf of the appellee, it is claimed in argument, that this statutory provision " ought to settle the question in this case," in his favor; and it has seemed to us, after reading the evidence, that the trial court must have taken the same view of this statutory provision as the appellee, in order to arrive at its finding and decision.

In the recent case of *Joab* v. *Sheets,* 99 Ind. 328, which was a suit by *habeas corpus* between the mother and father of an infant child, about the possession of the person of such child, this court said : " The question of the custody of the child was one in which the rights of the child were primarily involved, and where those of his parents were of secondary consideration merely." So, in Church on Habeas Corpus,

section 442, it is said, in substance, that the modern and " more humane doctrine " has gone far to qualify the old rule, that the father had an absolute right to his children, superior to that of the mother and all others, and that the doctrine is now generally recognized that the interest of the child is the paramount consideration. The case at bar is very similar in its facts to that of *Sturtevant* v. *State, ex rel.,* 15 Neb. 459. In that case, as in this, the controversy was for the custody and possession of a motherless child, of but a few months' age, between the father and maternal grandparents of such child. The statute of Nebraska, in relation to the custody of the person of an infant child, is almost identical with the statutory provisions of this State, above quoted; and it was claimed in the case cited, as in this case, that the statute settled the question in favor of the absolute right of the father to the custody of the person of his infant child, as against its maternal grandparents. It was held by the Supreme Court of Nebraska in the case cited, notwithstanding their statute, that if it appeared to be more for the benefit of the infant to remain with its grandparents than to be put under the care of its father, the court should refuse to direct the infant to be delivered to him; and that, in such a controversy for the custody of the child, the order of the court should be made with a single reference to the best interests of such child.

In *United States* v. *Green,* 3 Mason, 482, which was a *habeas corpus* proceeding by a father to obtain the custody of his infant child from its maternal grandfather, STORY, J., said : "As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain

whether it will be for the real, permanent interests of the infant; and if the infant be of sufficient discretion, it will also consult its personal wishes. * * * It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody."

In Schouler's Domestic Relations, section 248, in declaring the American rule upon the question we are now considering, it is said : " In this country the doctrine is universal that the courts of justice may, in their sound discretion, and when the morals or safety or interests of the children strongly require it, withdraw their custody from the father and confer it upon the mother, or take the children from both parents and place the care and custody of them elsewhere. * * * The cardinal principle relative to such matters is to regard the benefit of the infant; to make the welfare of the children paramount to the claims of either parent. * * * The primary object of the American decisions is then to secure the welfare of the child, and not the special claims of one or the other parent." To the same effect substantially, see, also, the following cases : *Gishwiler* v. *Dodez*, 4 Ohio St. 615; *Dailey* v. *Dailey*, Wright, 514; *Cook* v. *Cook*, 1 Barb. Ch. 639; *Corrie* v. *Corrie*, 42 Mich. 509.

With this summary of the law applicable thereto, we come now to the consideration of the second ground insisted upon by appellants' counsel for the reversal of the judgment below. It is claimed by counsel that the evidence in the record conclusively shows that the best interests of appellee's child will not be subserved by removing it from the custody of the appellants and placing it in the custody of the appellee ; and in this view of the evidence we concur with counsel. We have said that, as a general rule, this court will not weigh the evidence; but an exception to this rule is found in such cases as the one now before us. We have repeatedly held in *habeas corpus* cases, when the case is before us on the evidence, that it is our duty to examine and pass upon its sufficiency to sus-

tain the finding and decision below. *Ex Parte Sutherlin,* 56 Ind. 595; *Ex Parte Walton,* 79 Ind. 600; *Ex Parte Kendall,* 100 Ind. 599.

In the case in hand, after carefully examining and considering all the evidence appearing in the record, we have reached the conclusion that the best interests of appellee's child imperatively require that it should be suffered to remain, during the tender years of infancy, at least, in the custody and care of its grandparents, and that the court should have refused to direct the delivery of such child to its father, the appellee. The evidence does not sustain the finding and decision of the court in appellee's favor, and the court erred, we think, in overruling the appellants' motion for a new trial.

The judgment is reversed, with costs, and the cause is remanded, with instructions to enter an order that the child, Arthur J. Darnall, in accordance with this opinion, shall remain with the appellants, and that appellee's petition be dismissed, at his costs.

Filed Sept. 18, 1885; petition for a rehearing overruled Nov. 21, 1885.