ORLANDO BIONI ET UX. *v.* MAUD S. HASELTON, GUARDIAN.

May Term, 1926.

Present:   POWERS, SLACK, and BUTLER, JJ., and MOULTON and CHASE, Supr. JJ.

Opinion filed October 6, 1926.

*Constitutional Law—Due Process of Law—G. L. 3638, subd. III —Necessity of Notice Presumed—Parent and Child— Right of Parent to Custody of Minor Child and to Its Services—Welfare of Child—Discretion of Court—Preference of Minor as to Guardian—Presumption—Parents Entitled to Notice of Guardianship Proceedings—Appointment without Notice Void—Issue on Proceedings To Vacate Guardianship.*

1.   No one shall be deprived of any property or right by judicial process without notice and opportunity to be heard.

2.   "Due process of law," as used in the Fourteenth Amendment to the federal Constitution, providing that no state shall "deprive any person of life, liberty or property, without due process of law," means at least some legal procedure in which the person proceeded against, if he is to be concluded thereby, shall have an opportunity to defend himself.

3. Although G. L. 3638, subd. III, authorizing appointment of guardian for minors under certain circumstances, does not specifically provide for notice to parents of minor, it does not follow that it is wanting in due process of law, for, there being no express requirement to the contrary, statute will not be interpreted to authorize judicial proceedings without notice to parties to be affected thereby.

4. Parent has right, at common law, to custody, control, and services of his minor child, and right to minor's services is a species of property for wrongful interference with which parent may maintain an action.

5. Right of parent to custody of his minor child is not absolute, but subject to limitations, the welfare of child being the primary consideration in questions regarding its custody.

6. Controversies regarding custody of minors are to be decided by sound judicial discretion of court having jurisdiction.

7. In exercising such discretion, court should consider preference of minor, if of sufficient age and capacity.

8. Presumption is that natural affection of parent for child will insure faithful execution of trust which he holds as natural guardian.

9. In proceedings to secure appointment of guardian for minor domiciled in State, child's parents are entitled to notice and opportunity to present evidence of their circumstances, characters, and habits, before an order may be made to deprive them of their natural right of guardianship over their minor child, and their right to its services during minority.

10. Appointment of guardian of minor domiciled in State, under G. L. 3638, subd. III, without notice of proceedings to minor's parents who resided out of State, *held* void.

11. In proceedings on petition to vacate guardianship of minor child, where minor's parents had not been notified of proceedings to appoint guardian, question at issue is whether appointment was invalid, not whether welfare of minor requires continuance of guardianship; and petition affords no jurisdiction to probate court to pass upon necessity of guardianship.

APPEAL from order of probate court for the district of Rutland, dismissing petition of Orlando Bioni and wife to have set aside prior order of court appointing Maud S. Haselton guardian of their minor child. Heard at the September Term, 1925, Rut-

land County, *Fish,* J., presiding, and petition dismissed. The petitioners excepted. The opinion states the case. *Reversed, and appointment of guardian revoked.*

*Fenton, Wing & Morse* for petitioner.

*Jones & Jones* for petitionee.

MOULTON, Supr. J.   Mary Bioni is the daughter of the petitioners Orlando Bioni and his wife Concetta Bioni, who live in Brooklyn, New York.   In the summer of 1915, when Mary was about five years of age, her health was delicate, and through the instrumentality of a young woman connected with the Presbyterian Church, which her parents attended, she was sent to Mount Tabor, in this State, as a fresh air child.   She was received into the household of Mrs. Haselton, her present guardian, where she remained for about three weeks, after which time she . returned to her parents.   In 1917, her health still being delicate, she was sent to Vermont by the church fresh air committee, and stayed with Mrs. Haselton until late in the fall, when she again returned to her parents.   In the spring of 1918 Mrs. Haselton invited Mary to come to her house.   She came, and except for visits to her parents each year, other than 1922 and 1924, she has since remained there.   She went to school in Mount Tabor, and was graduated from the graded school in June, 1924, and in the fall of the same year entered the high school.   Mary's parents did not intend that their daughter should remain permanently in Mount Tabor, and her sister came to her graduation, with the intention of taking her back to Brooklyn, but Mary was not inclined to go.

Mr. and Mrs. Bioni are, as their names imply, Italians.   They usually converse in Italian, since they speak and understand English imperfectly.They are people in comfortable circumstances, and have a home suitable for the comfort and bringing up of Mary.   Mrs. Haselton is a woman of excellent character, with a good home, where Mary has been made very happy.   She has in the main supported Mary during her stay in Mount Tabor, and has provided most of her clothing, and desires to have Mary remain with her.   The petitioners have sent Mary some money and have furnished some clothing since she went to Mount Tabor, but the amount of clothing furnished by them has been incon-

siderable in comparison with that furnished by Mrs. Haselton.

Mary does not want to return to her parents. She does not speak Italian. She does not know her parents' acquaintances. She does not like their way of living. She prefers to remain with Mrs. Haselton in Mount Tabor.

On September 3, 1924, upon the application of Mrs. Haselton and Mary, without notice to Mary's parents, and without the introduction of any evidence in support of the allegations of the petition, the probate court appointed Mrs. Haselton guardian of the young girl. The petition was brought under the provisions of G. L. 3638, subd. III: ''The probate court may, on the application of a minor or his relative or friend, appoint a guardian of such minor in the following cases * * * III. When the father of the minor resides out of the state and has so resided for three years and has not contributed to the minor's support during such time; provided the minor has resided in the state three years when the application is made.''

After the appointment had been made, Mary's parents learned of it, and her mother and older sister came to Mount Tabor and attempted to persuade her to return to Brooklyn. Mary was obdurate, and her parents thereupon brought a petition to the probate court seeking to have the guardianship set aside. The petition was denied, and an appeal was taken to county court. That court, after hearing, made a finding of the facts, which have been above detailed, and having concluded that ''on the question of the good of Mary we think on the whole her interests in life will be better served by her remaining with Mrs. Haselton,'' dismissed the proceeding. The petitioners bring the case here on exceptions.

The petitioners attack the appointment of Mrs. Haselton as guardian on two grounds. They say it is null and void because no notice of the application was given them and because it was made by the probate court without any evidence having been introduced in support of the petition.

[1, 2] It is a rule of general application that no one shall be deprived of any property or right by judicial process without notice and opportunity to be heard. *In re Allen*, 82 Vt. 365, 371, 73 Atl. 1078, 26 L. R. A. (N. S.) 232; *Windsor* v. *McVeigh*, 93 U. S. 277, 23 L. ed. 915; *Mason's Guardian* v. *Mason*, 86 Vt. 279, 281, 84 Atl. 969; *Perry* v. *Perry*, 94 Vt. 487, 489, 490, 111 Atl. 632; *Chase* v. *Hathaway*, 14 Mass. 222. The Fourteenth

Amendment of the federal Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law," and, as said in *In re Gannon,* 16 R. I. 537, 538, 18 Atl. 159, 160, 5 L. R. A. 359, 27 A. S. R. 759: "Without attempting to define the exact meaning of the phrase 'due process of law' it suffices for the present inquiry to say that it means at least some legal procedure in which the person proceeded against, if he is to be concluded thereby, shall have an opportunity to defend himself."

[3]   The statute under which the application for guardianship was brought does not specifically provide for notice to the parents of the minor; but it does not follow that it is wanting in due process of law.   There being no express requirement to the contrary, the statute will not be interpreted to authorize judicial proceedings without notice to the parties to be affected by them.   In the absence of a plain provision to this effect, the common law requires that notice shall be given.   *In re Allen,* 82 Vt. 365, 372, 373, 73 Atl. 166, 26 L. R. A. (N. S.) 232.

[4]   A parent has the right, at common law, to the custody, control, and services of his minor child.   The right to the minor's services is a species of property, and the parent may maintain an action for the wrongful interference with this right *per quod servitium amisit.   Fitzgerald* v. *Connors,* 88 Vt. 365, 368, 92 Atl. 456; *Trow* v. *Thomas,* 70 Vt. 580, 584, 585, 41 Atl. 652; *Judd* v. *Ballard,* 66 Vt. 668, 673, 30 Atl. 96; *Kenure* v. *Brainerd & Armstrong Co.,* 88 Conn. 265, 91 Atl. 185; *Brackett* v. *Brackett,* 77 N. H. 68, 87 Atl. 252; *Lawyer* v. *Fritcher,* 130 N. Y. 239, 29 N. E. 267, 14 L. R. A. 700, 27 A. S. R. 521.

[5, 6]   The right, however, to the custody of the minor child is subject to limitations.   As is said in *Lippincott* v. *Lippincott,* 97 N. J. Eq. 517, 519, 128 Atl. 254, 255:

"Thus, it has been quite generally held that even the natural right of the father to the custody of his child cannot be treated as an absolute property right, but rather as a trust reposed in the father by the state as *parens patriae* for the welfare of the infant."

See, also, *Jones* v. *Darnall,* 103 Ind. 569, 2 N. E. 229, 53 A. S. R. 545; *Mercein* v. *People,* 25 Wend. (N. Y.) 64, 35 A. D. 653; *U. S.* v. *Green,* 3 Mason 482, Fed. Cas. No. 15, 256.

The welfare of the child is the primary consideration in questions regarding its custody.   *Deyette* v. *Deyette,* 92 Vt. 305, 309,

104 Atl. 232, 4 A. L. R. 1115.   It is "the touchstone of our juris-
prudence in matters dealing with the custody and control of in-
fants."   *Lippincott* v. *Lippincott, supra.*    Such controversies
are to be decided by the sound judicial discretion of the court
having jurisdiction.   *Deyette* v. *Deyette, supra; Lippincott* v.
*Lippincott, supra; People* v. *Mercein,* 8 Paige (N. Y.) 47, 55,
56; *Jones* v. *Darnall, supra.*

[7, 8]   In exercising this discretion, the preference of the
minor, if of sufficient age and capacity, is to be consulted and
given weight, *Richards* v. *Collins,* 45 N. J. Eq. 283, 17 Atl. 831,
14 A. S. R. 726.   But the claims of the parents are not to be
overlooked.   *People* v. *Mercein,* 8 Paige (N. Y.) 47, 56.   Their
right to the custody of minor children as against a stranger will,
it has been said, control the judgment of the court, unless cir-
cumstances of weight and importance connected with the welfare
of the child exist to overbear such parental right; although such
right will not be regarded as controlling when to do so would
imperil the child's safety, morals, health, or happiness.   The
court must look at the character, conditions, habits, and sur-
roundings of the parents, in solving this delicate question.
*Richards* v. *Collins, supra; Jones* v. *Darnall, supra.*   There is a
presumption that the natural affection of a parent for a child
will insure the faithful execution of the trust which he holds as
natural guardian, and, while this presumption may be overcome
by proof that his character, means, and surroundings are such
as to render him unsuitable, if he is a proper person there is
no occasion for his removal and the appointment of another.
*Brackett* v. *Brackett,* 77 N. H. 68, 87 Atl. 252.   *State* v. *Richard-
son,* 40 N. H. 272.   This principle has been recognized by our
Legislature, in the enactment of No. 84, Acts 1921, that "The
father and mother of a legitimate minor child shall, if competent
be joint guardian of such child.   The surviving parent shall, if
competent become the sole guardian"; and in G. L. 3640, "When
a parent authorized to act as guardian is living and the appoint-
ment of a guardian is required, such parent, if approved by the
court, may be appointed."

In *Farrar* v. *Olmstead,* 24 Vt. 123, it was held that under
the statute (now G. L. 3638, subd. I), providing for the appoint-
ment of a guardian "when the minor has no parent living
authorized to act as his guardian," no notice is required to be
given to any one, "for the obvious reason that no adverse interest

is involved in the adjudication or concluded by the decree of the court,'' thus by implication holding that the parents, if living and authorized to act, would be entitled to notice.

[9]   We think that the petitioners were entitled to notice and opportunity to present evidence of their circumstances, characters, and habits, before an order should be made to deprive them of their natural right of guardianship over their minor child, and their right to her services during her minority.   They were entitled to have these considerations presented to the probate court, as a guide to the exercise of its discretion in passing upon the question of guardianship.

[10, 11]   The petitionee argues that the absence of notice is not now material, because in the present proceeding to vacate guardianship, the petitioners Bioni have appeared and have been heard at length in the probate court and in the county court, on appeal; and that the case has now been decided upon its merits and the guardian continued in office.   But the issue in this proceeding was whether the appointment was invalid, by reason of the defects assigned, and not whether the welfare of Mary required the continuance of the guardianship.   The relative fitness of Mr. and Mrs. Bioni and of Mrs. Haselton was beside the point.   The appointment of the latter having been made without notice, the proceedings in the probate court, for that purpose, were *coram non judice* and void.

Jurisdiction to pass upon the necessity of guardianship was not acquired under the present petition.

Under this disposition of the case, it is unnecessary to consider the question as to the failure to find the requisite jurisdictionary fact or the exceptions to the findings as briefed by the petitioners.

*Judgment reversed, and judgment that the appointment of Maud S. Haselton as guardian of Mary Bioni is revoked, set aside and held for naught.   To be certified to the probate court.*