**Hugh Rutherford, a minor child, by his mother and next friend, Mary Ann Rutherford v. Robert and Shelly Best**

[421 A.2d 1303]

No. 459-79

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed September 11, 1980

*Peter H. Carter* of *Mahady, Dunne, Hershenson & Scott,* Norwich, for Petitioner.

*Keyser, Crowley, Banse & Kenlan, Inc.,* Rutland, for Respondents.

Hill, J. This is an appeal from the denial of a petition for habeas corpus. The petition was brought by Mary Ann Rutherford, on behalf of her minor child, Hugh Rutherford, to challenge the constitutional validity of 14 V.S.A. § 2645(2). That statute provides:

> On the application of a minor, his relative or friend, the probate court may appoint a guardian of such minor in the following cases:
>
> . . . .
>
> (2) When the minor has a parent living and such minor is the owner of real or personal estate, or when the parent is under guardianship or shown to be incompetent or unsuitable to have the custody of the person of the minor.

Petitioner raises two constitutional arguments, both rooted in the due process clause of the fourteenth amendment to the United States Constitution. First, she claims the standard of unsuitability contained in the statute is so vague that it fails to "delineate the type of conduct which will result in the forfeiture of custody of one's natural child." Second, petitioner claims that the statute "is totally lacking in procedural . . . safeguards."

This dispute had its genesis in an application filed pursuant to 14 V.S.A. § 2645(2) by Robert and Shelly Best, uncle and aunt of the minor child. Alleging as their only ground that Mary Ann Rutherford was "unsuitable to have the custody and control of [Hugh]," the Bests sought to have themselves appointed guardians. Thirteen days after the Bests filed their application, Mary Ann Rutherford filed an application pursuant to 14 V.S.A. § 2645(3)[1] requesting that her friend,

---

[1] That section provides:

> On the application of a minor, his relative or friend, the probate court may appoint a guardian of such minor in the following cases:
>
> . . . .
>
> (3) When the father of the minor resides without the state and has so resided for three years and has not contributed to the minor's support during such time, provided the minor has resided in the

Barbara Bowen, be appointed guardian for Hugh. This latter petition was filed ostensibly because Mary Ann Rutherford was contemplating enlisting in the armed services, the regulations of which prohibited an enlistee from having the care and custody of a minor child during basic training. The Hartford District Probate Court heard both applications together, and granted, without giving any reasons, the Bests' application. Custody and guardianship of Hugh Rutherford was then transferred to the Bests.

Apparently abandoning her plans to enlist in the armed forces, Mary Ann Rutherford petitioned the Hartford District Probate Court pursuant to the provisions of 14 V.S.A. §§ 3003–3004 for removal of the guardians. A hearing on this petition was held on February 1, 1979, before another judge, who summarily denied the petition citing as his reason the prior unrecorded testimony at the first hearing. No appeal was taken from either order.

On February 22, 1979, Mary Ann Rutherford filed a habeas corpus petition in the Windsor Superior Court to regain the custody of her child. Her arguments in that court were the same as those she presently raises in this Court. The superior court, finding that the case of *Bioni* v. *Haselton,* 99 Vt. 453, 134 A. 606 (1926), provided specific guidelines for determining suitability under 14 V.S.A. § 2645(2), and that there were no procedural shortcomings, denied the petition. This appeal followed.

 Initially, it should be noted that habeas corpus is an appropriate proceeding to determine petitioner's contentions. While it is true that habeas corpus generally is not available as a substitute for appeal or to correct errors of law, see, e.g., *In re Dobson,* 125 Vt. 165, 212 A.2d 620 (1965); *In re Rickert,* 124 Vt. 232, 203 A.2d 602 (1964), an exception to this rule is recognized where there has been a deprivation of fundamental or constitutional rights, see, e.g., *In re Newton,* 125 Vt. 453, 218 A.2d 394 (1966); *In re Squires,* 114 Vt. 285, 44 A.2d 133 (1945); *In re Hook,* 95 Vt. 497, 115 A. 730

state three years when the appointment is made. This clause shall not take away from the court the power to appoint a guardian as otherwise provided by law.

(1922). Petitioner's due process claims fall within this exception.

■ It is a basic principle of due process that a legislative enactment is invalid if it imposes a burden on the exercise of a person's liberty for failure to conform his conduct to a standard that is "so vague and indefinite that no one could know what it [is]." *A. B. Small Co.* v. *American Sugar Refining Co.*, 267 U.S. 233, 238–39 (1925). See also *In re Proceedings Concerning a Neglected Child*, 130 Vt. 525, 296 A.2d 250 (1972). "Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce." *Giaccio* v. *Pennsylvania*, 382 U.S. 399, 403 (1966). The important values served by this safeguard were discussed at length in *Grayned* v. *City of Rockford*, 408 U.S. 104 (1972), and generally include fair warning of prohibited conduct, protection against impermissible delegation of basic policy matters, and protection against the inhibition of the exercise of constitutional rights. See *Alsager* v. *District Court*, 406 F. Supp. 10, 17–21 (D. Iowa 1975).

■ That petitioner has a liberty interest protected by the due process clause is without question. It has been held in a long line of cases in both this Court and the United States Supreme Court that "the freedom of children and parents to relate to one another in the context of the family, free of governmental interference, is a basic liberty long established in our constitutional law." *In re N. H.*, 135 Vt. 230, 236, 373 A.2d 851, 856 (1977). See also *Stanley* v. *Illinois*, 405 U.S. 645 (1972); *Meyer* v. *Nebraska*, 262 U.S. 390 (1923); *In re J. & J. W.*, 134 Vt. 480, 365 A.2d 521 (1976) (Larrow, J., concurring).

■■ In determining whether the statutory standard of unsuitability is so vague as to offend due process, we are mindful of the rule that vague legislative standards may be saved if the needed specificity has been supplied by this Court. See, e.g., *Grayned* v. *City of Rockford, supra,* 408 U.S. at 111. We believe that such a saving interpretation was rendered by this Court in *Bioni* v. *Haselton, supra.* In that case, the Court had the opportunity to interpret the statutory

predecessor to 14 V.S.A. § 2645. While the suitability provision of that statute was not directly in issue, the Court, in what can only be termed extensive and considered dicta, provided a narrowing interpretation of the circumstances under which the guardianship of a child could be taken from his natural parents. The opinion in *Bioni* proceeded from the premise that a parent has a fundamental right to the custody and control of his child. This interest, it was said, would not be defeated by another "unless circumstances of weight and importance connected with the welfare of the child exist to overbear such parental right." 99 Vt. at 458, 134 A. at 607. The parental right would "not be regarded as controlling when to do so would imperil the child's safety, morals, health, or happiness." *Id.* Leaving aside the inherently subjective terms morals and happiness, we believe that the standards safety and health, read in pari materia with the related subject area governed by the juvenile procedure statutes, 33 V.S.A. §§ 631–667, see *Champlain Valley Exposition, Inc.* v. *Village of Essex Junction,* 131 Vt. 449, 454, 309 A.2d 25, 28 (1973), require that there be a showing that the child has been abandoned or abused by the parent, or that the child is without proper parental care or subsistence, education, medical, or other care necessary for his well-being, see 33 V.S.A. § 632(a)(12)(A) and (B), before a parent's rights can be defeated. Factors that the *Bioni* Court believed had an important bearing on this determination were "the character, conditions, habits, and surroundings of the parents." 99 Vt. at 458, 134 A. at 607. These factors are not, of course, to be weighed in the abstract, influenced by one's personal predilections toward proper child rearing. They are to be considered only insofar as they bear on the parent's ability to provide for the safety and health of the child, keeping in mind "our social policy of bolstering the family unit, preserving it, where necessary, by financial and other support." *In re J. & J. W., supra,* 134 Vt. at 486, 365 A.2d 521 (Larrow, J., concurring).

In light of the judicial gloss given in the *Bioni* case to the term "unsuitable," we believe that that standard is not so vague that parents of common intelligence would be forced to guess at its meaning. See *Connally* v. *General Construc-*

*tion Co.*, 269 U.S. 385, 391 (1926). Accordingly, petitioner's vagueness claim must fail.

The *Bioni* case is also the starting point for addressing petitioner's claim that the process by which the Bests obtained guardianship of Hugh was lacking in adequate procedural safeguards. In that case, the Court stated:

> We think that the petitioners were entitled to notice and opportunity to present evidence of their circumstances, characters, and habits, before an order should be made to deprive them of their natural right of guardianship over their minor child . . . .

99 Vt. at 459, 134 A. at 608. But petitioner further argues, and we believe correctly, that in cases of this nature, where the state "encroaches upon the private realm of family life," *In re Proceedings Concerning a Neglected Child, supra,* 130 Vt. at 530, 296 A.2d at 253, additional safeguards are required. Although spoken in the context of a juvenile proceeding, Justice Keyser's comments in *In re Lee,* 126 Vt. 156, 224 A.2d 917 (1966), are equally applicable here.

> Constitutional safeguards must be observed in this class of proceeding. The statute suspending certain formalities notwithstanding, fulfilment of constitutional requirements cannot be avoided. The parties have the right to be faced by and hear the witnesses who give evidence in court against him and have the opportunity to cross-examine them. And the evidence given in such cases should be confined to the charges alleged in the petition filed in the case. Due process means the presentation of competent evidence on which the findings of the court are predicated and the commitment rests.

*Id.* at 158–59, 224 A.2d at 919.

In the present case, although a hearing was held, we have no record of the evidence presented. To make matters worse, both probate judges failed to state any reasons, let alone compelling reasons, for finding Mary Ann Rutherford to be an unsuitable mother. To be sure, probate proceedings generally are informal, and there is no statute or rule that requires a transcript to be prepared or findings to be made.

But when a probate proceeding is used as a vehicle to separate parent and child, it loses its informality. At that point, fundamental fairness requires that an adequate record be prepared and that the probate judge make findings, so that on appeal to this Court, we can determine whether the record supports the findings and whether the findings support the judgment. *In re J. M.*, 131 Vt. 604, 608, 313 A.2d 30, 32 (1973); *In re Rich*, 125 Vt. 373, 379–80, 216 A.2d 266, 270 (1966) (Holden, C.J., concurring).

*The judgment of the superior court is reversed, and the cause is remanded to the Windsor Superior Court for a new hearing in accordance with this opinion.*