553 A.2d 1078 (1988)
In re S.B.L.
No. 84-578.
Supreme Court of Vermont.
August 26, 1988.
*1079 M. Jerome Diamond and Suzanne R. Brown, Law Clerk (On the Brief), of Diamond *1080 & Associates, P.C., Montpelier, for appellant.
David C. Drew and Susan A. Davis, Law Clerk (On the Brief), Lyndonville, for appellee.
Before ALLEN, C.J., PECK and DOOLEY, JJ., BARNEY, C.J. (Ret.) and KEYSER, J. (Ret.), Specially Assigned.
DOOLEY, Justice.
A grandfather appeals from a superior court order denying him custody of or visitation with his granddaughter, S.B.L. The defendant below, appellee here, is the natural father of S.B.L. We affirm the custody award and reverse and remand the order denying visitation.
S.B.L. was born in April of 1979 to a 17-year-old mother (mother) and a 20-year-old father (father) who were not married. The father and mother lived together for about 6 months after S.B.L.'s birth and then separated. S.B.L. and her mother went to live with her mother's parents (hereinafter grandparents). The father visited S.B.L. infrequently and apparently provided no support. The grandparents were actively involved in S.B.L.'s upbringing.
In October of 1982, S.B.L.'s mother died in an automobile accident. Subsequently, the grandfather applied to the probate court pursuant to 14 V.S.A. § 2645 to be appointed guardian of S.B.L. The father objected, at least so far as the guardianship would also give custody to the grandfather. The probate court initially entered a proforma order to allow review in the superior court. The superior court, however, remanded for fact finding. Following the remand, the probate court took evidence and made extensive findings. The court denied the guardianship petition, leaving the father as the "natural guardian and custodian of his daughter" subject to certain specified rights of visitation in the grandparents. The grandfather appealed to the superior court.
The superior court treated the appeal as a custody case. In a notice of decision, the court indicated that it would grant custody to a nonparent third party "given proper grounds" where it found "extraordinary circumstances." Based on its findings that the father was the primary caretaker, was fit and that it would be in the best interests of S.B.L. to award custody to the father, the court determined that no extraordinary circumstances existed that would warrant an award of custody to the grandfather. Accordingly, the court awarded custody to the father. The court further concluded that "unrestricted visitation" by the grandparents should be ended, although it did not preclude future visitation "if the parties submitted themselves to counseling and the visits [were] monitored under professional supervision." However, the court did not believe that the evidence was adequate to allow it to fashion such a visitation order at that time.
Following the notice of decision, the court entered a judgment denying the grandfather's appeal from probate court so that "the custody of S.B.L. shall remain with her natural father" and denying all visitation rights to the grandparents. The grandfather appealed to this Court.
Before we reach the substantive issues raised by the grandfather, we must address a procedural issue. The evidentiary hearing in this case went on for five days. The stenographic notes of the last day of hearing are missing, however, and as a result there is no transcript available for that day. The grandfather's appellate counsel states that he was not trial counsel and does not know what occurred on that last day. He believes, however, that the court may have made oral findings on the record and the grandfather's trial counsel may have requested written findings. Because the superior court did not make any written findings, he argues that proper review is impossible and the only fair course of action is to reverse and remand for a new trial so that a proper record can be made for review.
Our rules provide remedies when a transcript is unavailable. V.R.C.P. 59(f) authorizes the trial court to set aside a judgment and grant a new trial where a material part of the transcript is unavailable without *1081 fault of the parties and the lack of the complete transcript prevents a party from "effectively prosecuting an appeal." In this case, appellant failed to make a motion in the trial court for relief under V.R.C.P. 59(f).
V.R.A.P. 10(c) provides that where a transcript is unavailable, the appellant may prepare a statement of "the evidence or proceedings from the best available means." The statement is served on the appellee who can object with the presiding judge in the trial court to resolve any differences. See also V.R.A.P. 10(e) (procedure for correcting any error in the record). There is no indication that appellant has pursued the procedure set out in V.R.A.P. 10(c). In fact, the appellant has failed to order a transcript even for the days for which a transcript is available, and there is neither an order from the superior court nor a stipulation of the parties dispensing with the requirement to provide a transcript of the proceedings for which one can be prepared. See V.R.A.P. 10(b).
As we noted in State v. Moquin, 135 Vt. 94, 96, 369 A.2d 1371, 1372-73 (1977):
The function of appellate ... review is not one of searching a record to find grounds to argue to this Court. It is to review the proceedings in the light of claims of error made at the trial in some form. Even those instances of so-called "clear error" generally are identifiable without requiring the reproduction of an entire trial record.
It is the burden of the appellant to demonstrate how the lower court erred warranting reversal. We will not comb the record searching for error. The appellant has failed to show that the loss of the transcript has clearly prejudiced him, has failed to use V.R.A.P. 10(c) to eliminate any potential prejudice, and is hardly in a position to claim prejudice when he has failed to order a transcript of those parts of the proceedings for which a transcript can be prepared. Accordingly, we will not reverse for a new trial because of the missing transcript.
Appellant grandfather raises two substantive issues on appeal: the trial court based its custody award on an erroneous construction of 15 V.S.A. § 652, the relevant custody statute; and the trial court failed to consider the right of the grandparents to visitation established by 15 V.S.A. § 1013. We need reach the latter issue only if we disagree with appellant on the custody issue. Moreover, there is some question whether the grandfather has a right to appeal the visitation order.
The resolution of the issues raised by the grandfather requires us to analyze a series of interrelated statutes in light of a factual pattern that has not formerly been before this Court. For the reasons stated below, we find that appellant's analysis of the statutory scheme is erroneous. Further, as often is the case with statutory construction, the meaning of our relevant statutes is not immediately clear and, in fact, a literal reading may produce a result contrary to the intent of the Legislature.
The instant case is novel because it is presented as a custody fight between a father of a child born out of wedlock, and a person who is neither the spouse of that party nor a parent of the child over whom custody is sought. As none of our modern cases involve parties of either of these classes, the presence of both as adversaries in a single case requires us to break substantial new ground.[1]
While we perceive this case as one requiring extensive analysis because of the issues involved, the grandfather argues it as a simple extension of Paquette v. Paquette, 146 Vt. 83, 499 A.2d 23 (1985). In Paquette, which was a divorce proceeding, a divided Court held that the trial court erred in not awarding custody of a child to *1082 the child's stepfather rather than to the natural mother. The Court determined that such an award could be made if the natural parent is "unfit" and it is in the best interests of the child. 146 Vt. at 92, 499 A.2d at 30. Thus, while there is a presumption that it is in the best interests of the child to grant custody to a natural parent, the Court stressed that such presumption can be overcome "by clear and convincing evidence that the natural parent is unfit or that extraordinary circumstances justify an award of custody to a nonparent." Id. The grandfather argues here that Paquette controls but that the requirement of showing parental unfitness or extraordinary circumstances should be eliminated because it is not contained in the relevant statute, 15 V.S.A. § 652.[2]
We find Paquette to have little bearing on the instant case. Paquette was a divorce case in which the custody dispute arose between husband and wife. Two statutes were involved in Paquette. The stepfather relied on 15 V.S.A. § 293, which authorizes a stepparent to bring a petition against the parent seeking a decree "concerning the care, custody, maintenance and education" of the child if the parties are living separately. The mother relied on the divorce custody statute, 15 V.S.A. § 652,[3] which authorizes a custody award for a "child of the marriage." In essence, the Court held that § 652 had to be read in light of the specific authorization of § 293 so that the stepfather could seek custody.
Neither of the statutes involved in Paquette apply here. In fact, we have no statutes that authorize a third party, such as a grandparent, to seek custody of a child. Specifically, the child custody standards of § 652, now 15 V.S.A. § 665, apply only in divorce or annulment proceedings, and not in a case such as this. Thus, the grandfather's argument that he can obtain custody based on a proper reading of § 652 must fail.
At this point, it is important to emphasize that this case began as a guardianship case, even though custody was the primary goal of the grandfather. Under our statute, the guardian of a minor normally has custody of the minor. 14 V.S.A. § 2653(a). The grandfather proceeded under 14 V.S.A. § 2645(2), which provides that the probate court may appoint a guardian for a minor when "the parent is under guardianship or shown to be incompetent or unsuitable to have custody of the person of the minor." This approach failed because the probate court found the appellee to be a "parent" under § 2645(2) and to be a competent and suitable custodian. The superior court reached a similar result although it went beyond the theory used in the probate court. It viewed the dispute as a custody fight between a natural parent and a third party in which the third party could prevail only if the parent was unfit. Its theory was based both on the guardianship statute, 14 V.S.A. § 2645(2), and pre-Paquette decisions of this Court. See Miles v. Farnsworth, 121 Vt. 491, 160 A.2d 759 (1960); Bioni v. Haselton, 99 Vt. 453, 134 A. 606 (1926).
Our statutes follow the common law and make the father and mother, if competent, the joint guardians of a "legitimate minor child." 14 V.S.A. § 2641. However, only the mother of a "bastard minor child shall be guardian of such child until another is appointed." 14 V.S.A. § 2644. At common law, this meant that on the death of the mother, it became necessary for the court to appoint a guardian because the father did not assume that role merely by virtue of his biological parenthood. See J. Woerner, The American Law of Guardianship § 29, at 89 (1897); see also In re Byron, 83 Vt. 108, 110-11, 74 A. 488, 489 (1909) *1083 (mother of illegitimate child entitled to habeas corpus against the father to obtain custody of the child); Brauch v. Shaw, 121 N.H. 562, 569, 432 A.2d 1, 4 (1981) (at common law, mother has custody and control of illegitimate child and father has no right to custody and control).
Parental guardianship can be replaced in only limited circumstances. Section 2645 provides for five circumstances under which an interested person other than a parent can be appointed guardian of a minor: (1) the minor has "no parent living authorized to act as guardian"; (2) the parent is under guardianship or is incompetent or unsuitable; (3) the parent has resided without the state for three years and the minor within the state for three years, and the parent has not provided support during this time; (4) no parent objects and a transfer of custody is in the best interest of the minor; or (5) the minor owns real or personal property and guardianship of the property but not the person is needed. 14 V.S.A. § 2645. We have carefully construed these exceptions to parental control because of the important parental interests involved. In Rutherford v. Best, 139 Vt. 56, 61, 421 A.2d 1303, 1306 (1980), we interpreted the parental unsuitability exception as requiring a showing that "the child has been abandoned or abused by the parent, or that the child is without proper parental care or subsistence, education, medical, or other care necessary for his well-being...."
The limited position of the biological father of a child born out of wedlock appears elsewhere in our law. Thus, traditionally the mother of a child born out of wedlock could give up the child for adoption with no notice to the natural father and without his consent. See 15 V.S.A. § 435(2). Only in 1978 was a provision added to the adoption law that suggested that the father of the child born out of wedlock had any rights to prevent adoption of the child. See 1977, No. 217 (Adj. Sess.), § 2 amending 15 V.S. A. § 435(2). Whatever rights were thus recognized as residing in the father were enacted to comply with the decision of the Supreme Court of the United States in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
In this case, the holdings in the probate court and the superior court would have been correct if the appellee were the mother of S.B.L. rather than the father. As applied to the father of a child born out of wedlock, however, they rest on an improper construction of 14 V.S.A. § 2645. We hold that § 2645 refers only to a mother of a child born out of wedlock. See 14 V.S.A. §§ 2644, 2645. There is no per se statutory preference in favor of the natural father of a child born out of wedlock, and the statute does not impose on third parties seeking custody the initial burden of proving the father to be incompetent or unsuitable.
In construing a statute, we are guided by certain rules of construction. Our primary aim must be to determine the intent of the legislature. Paquette v. Paquette, 146 Vt. at 86, 499 A.2d at 26. Thus, we must look not only at the letter of a statute but also its reason and spirit. Langrock v. Department of Taxes, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980). We must base any construction on the whole of the statute. State v. Jarvis, 146 Vt. 636, 637-38, 509 A.2d 1005, 1006 (1986). We must construe statutes relating to the same subject matter in pari materia. In re A.C., 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984). We must avoid results that are irrational or unreasonable. Lubinsky v. Fair Haven Zoning Board, 148 Vt. 47, 50, 527 A.2d 227, 228 (1986). A statute can be construed as changing the common law only where that intent is expressed clearly and unambiguously. Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986).
Based on these rules of construction, we hold that the biological father of a child born out of wedlock is not a "parent" for purposes of 14 V.S.A. § 2645 and, therefore, the statute did not require that the grandfather in the instant case prove the father to be "unsuitable" or "incompetent" in order to be appointed guardian *1084 of S.B.L.[4] This case was actually governed by § 2645(1), which allows for appointment of a guardian "[w]hen the minor has no parent living authorized to act as guardian" (emphasis added). Three reasons support this result.
First, this construction gives effect to all parts of the statutory scheme and reads them together in pari materia. Sections 2641 and 2644 clearly distinguish between children born in wedlock and those born out of wedlock. Requiring a third party seeking appointment as guardian to prove the unsuitability of a biological father elevates the father to the same status of the father of a child born in wedlock, which is exactly the status the legislature denied him. Further, § 2645(1) talks of the absence of a "parent living authorized to act as guardian." By virtue of § 2644, the father of a child born out of wedlock is denied the right "to act as guardian," a right he would have if the child were born in wedlock. Finally, it is illogical to suggest that the biological father can prevent a third party from becoming guardian and custodian of a child, but cannot prevent the third party from adopting the child. 15 V.S.A. § 435.
Second, this construction is consistent with the common law. As we recently held in Langle v. Kurkul, 146 Vt. at 516, 510 A.2d at 1303:
The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter.
See also State v. LeBlanc, 149 Vt. 141, 143, 540 A.2d 1037, 1039 (1987). Here, there is no "clear and unambiguous language" showing an intent to change the common law rule. Any ambiguity must be construed in favor of the common law rule.
Third, the opposite construction leads to irrational and unreasonable results as demonstrated by this case. The probate court found that the grandfather had not shown the biological father to be incompetent or unsuitable so it denied the guardianship petition. Since the father was not the guardian of S.B.L. because of § 2644, it left S.B.L. without a guardian. Presumably the father could apply for guardianship under § 2645, but no grounds would apply for the same reason that they are not available to the grandfather. The child is thus left in a statutory limbo without a guardian. The legislature could not have intended such an irrational result.
For the above reasons, the statute does not prevent a grandparent from competing on an equal footing with a biological father for the guardianship and custody of an illegitimate child. If the statute alone controlled, we would have to reverse the judgment for the father as the trial court clearly held that the grandfather had to show that the father was an unfit custodian. The proper construction of the statute, however, raises important constitutional questions that we must resolve before determining the grandfather's burden.
As we have recently noted in a guardianship case, "the right of a parent to custody and the liberty interest of parents and children to relate to one another in the context of the family, free of governmental interference, are basic rights" protected by the United States Constitution. Guardianship of H.L., 143 Vt. 62, 65, 460 A.2d 478, 479 (1983). In a line of cases culminating with Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), the United States Supreme Court defined the rights of fathers of children born out of wedlock with respect to those children. See also Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Stanley v. Illinois, *1085 supra. Lehr involved a New York statute that gave notice of adoption proceedings to putative fathers of children born out of wedlock only in certain circumstances. The circumstances included situations where the putative father was identified as the father on the birth certificate; where the putative father had lived openly with the mother and child; where the putative father was identified as the father in a sworn statement given by the mother; or where the putative father and the mother married before the child was six months old. As a last resort, the statute allowed the putative father to register as the father in a central registry and required the adoption court to check this registry and give notice to anyone claiming to be the father of the child. The plaintiff in Lehr fit into none of the categories and did not receive notice of his child's adoption. He challenged the statute as a violation of due process of law and a violation of equal protection of the law because mothers of children born out of wedlock were favored over fathers.
The Court found the New York statute constitutional because it found that the plaintiff did not have an interest that warranted constitutional protection. In response to the due process challenge the Court found:
When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," ... his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children...." But the mere existence of a biological link does not merit equivalent constitutional protection....
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring.
463 U.S. at 261-62, 103 S.Ct. at 2993. Because the father in Lehr had not come forward to participate in the rearing of his child, he had no cognizable due process interest. The Court similarly analyzed the equal protection challenge. The plaintiff based the challenge on the fact that the biological mother could always veto the adoption whereas the biological father could veto the adoption only if he received notice and appeared. The Court held that the mother and father are "similarly situated" only if both have "established any custodial, personal, or financial relationship" with the child. 463 U.S. at 267, 103 S.Ct. at 2996. Thus the father in Lehr who had "either abandoned or never established a relationship" with the child was not subject to invidious discrimination. Id. at 267-68, 103 S.Ct. at 2997.
While Lehr dealt with an adoption statute, its principles apply equally to the guardianship statute. To grant guardian status  and therefore custody  to the mother of a child born out of wedlock while denying it to the biological father does not per se constitute invidious discrimination. However, to deny such status to a biological father who has developed the requisite custodial, personal or financial relationship with the child denies equal protection of the law to the biological father under the principles set forth in Lehr.
We conclude therefore that granting guardianship to a third person in preference to a parent who has demonstrated a commitment to parenthood based solely on a judicial determination of the best interests of the child  without first requiring the third party to demonstrate that the parent is unfit  denies the natural parent due process of law. In Quilloin v. Walcott, a forerunner of Lehr, the Court stated:
We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."
434 U.S. at 255, 98 S.Ct. at 555 (quoting Smith v. Organization of Foster Families, *1086 431 U.S. 816, 862-63, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in judgment)); see also Lehr v. Robertson, 463 U.S. at 258, 103 S.Ct. at 2991 (relationship of love and duty in a recognized family unit is "an interest in liberty entitled to constitutional protection").
In reaching the conclusion that the father of a child born out of wedlock who has established the requisite relationship with the child is constitutionally entitled to a form of parental preference in a custody or guardianship battle with a nonparent, we are following the trend in other states. In Brauch v. Shaw, 121 N.H. 562, 432 A.2d 1, the court considered a custody battle between the natural mother and the natural father of a child born out of wedlock. The court noted that the common law gave the mother the right to custody and control of an illegitimate child as against the father and no statute changed the common law. Id. at 569, 432 A.2d at 4. However, the court ruled that under Caban v. Mohammed and Stanley v. Illinois a maternal preference rule denied equal protection of the laws to a father who had "manifested a significant parental interest in the child." Id. at 570, 432 A.2d at 5. Accordingly, the court held that the trial court could make a custody award to either natural parent based on the best interests of the child. Id. See also In re Baby Girl M., 37 Cal.3d 65, 688 P.2d 918, 207 Cal. Rptr. 309 (1984) (state cannot deprive father of child born out of wedlock opportunity to have custody where father has made commitment to and exercise of custodial responsibility, based on Lehr and its progeny); In re Custody of Townsend, 86 Ill.2d 502, 513, 56 Ill.Dec. 685, 691, 427 N.E.2d 1231, 1237 (1981) (United States Supreme Court holdings "make it clear that the interest of a parent in the care, custody and control of his or her child is fundamental and not to be ignored or facilely swept away in the face of a competing petition for custody filed by a third party."); Sheppard v. Sheppard, 230 Kan. 146, 152, 630 P.2d 1121, 1127 (1981) ("It is clear under... decisions ... of the United States Supreme Court that a natural parent's right to the custody of his or her children is a fundamental right which may not be disturbed by the state or by third persons, absent a showing that the natural parent is unfit."); Barstad v. Frazier, 118 Wis.2d 549, 561, 348 N.W.2d 479, 486 (1984) (there is a zone of protected family autonomy applicable in a custody dispute but it is "not defined solely by genetic ties"); Note, The Rights of the Biological Father: From Adoption and Custody to Surrogate Motherhood, 12 Vt.L.Rev. 87, 92-99 (1987) (discussing the historical development of the rights of the putative father of children born out of wedlock).
This constitutional gloss must be applied to our interpretation of 14 V.S.A. §§ 2644 and 2645. A biological father of a child born out of wedlock is not  without more  entitled to joint guardianship with the mother, see § 2644, and is not a "parent" under § 2645. However, if the father demonstrates the requisite "custodial, personal, or financial relationship" as set forth in Lehr, he acquires the status of joint guardian with the mother, § 2644 notwithstanding, and a third party guardian may not be appointed for the child under § 2645 without proof of the requisite grounds  in this case that the father is "incompetent or unsuitable" under the standard adopted in Rutherford v. Best. In essence, such a putative father has the de facto status of the father of a child born in wedlock under 14 V.S.A. § 2641.[5]
*1087 Although the trial court used an incomplete analysis of the positions of the parties in this case, we do not believe the error is fatal to the decision. It appears that there was extensive evidence in the superior court on the relationship between S.B.L. and the biological father. That evidence is not available to us because the appellant has failed to order any of the transcript and to prepare a statement of the evidence for the day for which no transcript can be prepared. The appellant must bear the consequence of the lack of a transcript of the evidence. As we stated in Appliance Acceptance Co. v. Stevens, 121 Vt. 484, 488, 160 A.2d 888, 891 (1960):
It is the burden of the party challenging a ruling to furnish the reviewing court a transcript of the proceeding involved. The purpose is to prevent injustice being worked against the party prevailing below on the ruling in question. To omit to incorporate into the record on appeal the transcript of applicable testimony and proceedings without authorization is to forfeit review of questions requiring reference to the transcript. Since nothing in the record of this case discloses any consent by either the plaintiff or the presiding judge to proceed without a transcript, it would appear that the defendants unilaterally elected to ignore the provisions of [statute] ... and forego a transcript. They have thereby denied themselves the right to have reviewed in this Court those issues that necessitate resort to a transcript for their resolution.
Although we have adopted the Vermont Rules of Appellate Procedure to supersede the statute in effect at the time of Appliance Acceptance Co., the obligations under the rules are similar. See V.R.A.P. 10(b)(1). Because of the lack of a transcript, we must assume that the appellant grandfather failed to request findings of fact so that the trial court had no obligation to produce such findings. See V.R. C.P. 52(a). We must also assume that the evidence would show that the father had the requisite relationship with S.B.L. to be treated as a "parent" under 14 V.S.A. § 2645. We must also assume the evidence supports the trial court's finding that the father is a fit and suitable guardian so that this determination must be affirmed.
Other factors support affirmance in this case. The probate proceeding in this case involved whether guardianship would be given to a third person over the objection of a parent. Thus, the probate court was required to make written findings. Rutherford v. Best, 139 Vt. at 63, 421 A.2d at 1307. The probate court made such findings, and they demonstrate that the father had proved a sufficient custodial and personal relationship with S.B.L. to warrant his protection as a parent.
We must also recognize the reality of the passage of time in this case. The father had custody of S.B.L. for over two years by the time of the judgment in the superior court. The trial court found the father to be fit and that it was consistent with the best interest of S.B.L. for the father to have custody. Certainly, biological parenthood had ripened into a close relationship  custodial, personal and financial  by the time of the trial court judgment.
Having determined that the trial court's custody award must be affirmed, we must address the visitation order. The trial court refused to allow the grandparents to visit S.B.L., although the reasons for this decision are not clearly stated. Appellant argues that the trial court conclusions are inconsistent with Vermont's recent grandparent visitation law, 15 V.S.A. §§ 1011-1016. The act was effective on May 9, 1984, well before trial of this case in the superior court. Neither party disputes that the statute applies although the trial court did not cite it.[6]
Before considering the substance of the grandfather's claim, we must dispose of the appellee's position that a grandparent cannot appeal from a visitation decision involving the grandparent. Appellee relies on 15 V.S.A. § 1011(c), which provides: *1088 "No appeal may be taken by any grandparent from the court's decision on visitation as it pertains to any grandparent." To understand the proper meaning of that subsection, we must examine the whole statutory scheme.
The chapter on Grandparents' Visitation, chapter 18, actually provides for two methods under which a grandparent may obtain a visitation order. The first is described in § 1011(a). Under that section, a grandparent can make a written request for a visitation order to a court which is already considering the custody or visitation of a minor. The alternative is provided in § 1012. That section applies only if a parent of the minor child is "deceased, physically or mentally incapable of making a decision or has abandoned the child." In those circumstances, the grandparent may commence an action in superior court to obtain visitation rights.
The provision on which appellee relies is in § 1011 and can be viewed as applying only to proceedings under that section. Three reasons support this interpretation.
First, this interpretation is the most consistent with the intent of the legislation to the extent we can determine that intent. See State v. Harty, 147 Vt. 400, 402, 518 A.2d 30, 31 (1986). On this point, the history of the law is instructive. The bill, H.500, originated in the House of Representatives. The House passed a version of the bill that is similar to sections 1012 through 1016 in the final law. See 1984 House Journal 226-28. The House-passed bill did not contain an equivalent of the § 1011 procedure  that is, the right to request a visitation order in an existing proceeding  but it contained a very broad right to bring an independent action. See H.500, § 1 adding 15 V.S.A. § 1011 in 1984 House Journal 226. The Senate, however, added the § 1011 procedure and narrowed the grandparents' right to bring an independent action pursuant to § 1012. See 1984 Senate Journal 526 (Second Reading), 545-46 (Third Reading). The House accepted the Senate version and it became law.
Based on this history, it appears that § 1011 was a self-contained add-on to the House-passed bill. In fact, the Senate initially passed § 1011 as the total provision for grandparents' visitation rights and only on final reading added back a diluted version of the House procedure. See id.[7] Thus, § 1011 was drafted to be self-contained.
We must base our construction on the whole of the statutory scheme, State v. Jarvis, 146 Vt. at 637-38, 509 A.2d at 1006, and read all parts of the law covering the same subject matter in pari materia. See In re A.C., 144 Vt. at 42, 470 A.2d at 1194. Subsection (b) of § 1011 provides that "[n]o grandparent shall be afforded party status." That subsection cannot apply to § 1012 proceedings where the grandparents are the petitioning parties. The prohibition on appeals is a complementary provision to one that denies party status, suggesting that it too applies only to § 1011 proceedings.
Finally, the interpretation is consistent with our policy to allow appellate review of judicial decisions. Although we have recognized the power of the legislature to deny the right to appeal, we have found such a denial only where the legislature has spoken clearly. See In re Preseault, 130 Vt. 343, 346, 292 A.2d 832, 834 (1972). Where as here there is ambiguity, we resolve the ambiguity in favor of appellate review.
Having decided that the prohibition on judicial review applies only to § 1011 proceedings, we must decide what kind of proceeding is presently before us. Although this case began as a guardianship proceeding in probate court, it became a superior court action in which the grandparent sought custody or visitation. As of the effective date of the grandparent visitation statutes, the grandparent could have brought a separate action in superior court *1089 seeking visitation pursuant to 15 V.S.A. § 1012. That section clearly applies because the mother of S.B.L. was deceased at the time the grandfather sought custody. In view of our liberal rules of pleading allowing alternative claims to be joined, V.R.C.P. 8(a), the grandfather could have joined his claim under § 1012 with the others he was raising. He did essentially that, and the issues are properly before this Court.
The grandparent visitation statutes require in a § 1012 proceeding that the court grant reasonable visitation or access to the grandchild where it finds that to do so would be in the best interests of the grandchild. 15 V.S.A. § 1013(a). In making the "best interests" determination, the court must consider eight statutory factors. 15 V.S.A. § 1013(b). The statute has a structure very similar to our recent child custody statute, 15 V.S.A. § 665(b), which requires custody determinations to be based on the best interests of the child and requires the court to consider eight statutory factors in reaching its "best interests" conclusion. We have held that the child custody statute is satisfied if the record as a whole reflects that the trial court has taken the statutory factors into considerations in reaching its decision. See Harris v. Harris, 149 Vt. 410, 414, 546 A.2d 208, 211 (1988). This is an application of our general rule that we will not speculate on the decision reached or the reasons for that decision and will remand where the decision or grounds are missing. See Roy's Orthopedic, Inc. v. Lavigne, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982).
Our holdings on the court's obligations in child custody determinations apply equally to grandparent visitation determinations in view of the similarity of the statutes. In this case, the court gave no reasons for denying visitation to S.B.L.'s grandfather although it did give a statement of reasons for the custody determination. Because we cannot speculate on the reasons we must remand for further hearing of the visitation issue under the statutory factors contained in 15 V.S.A. § 1013. On this point, the missing transcripts would not have corrected the deficiency.
Affirmed as to custody and guardianship. Reversed and remanded as to visitation.
NOTES
[1] Our one precedent on the respective custody rights of parents and third parties was decided in 1926. Bioni v. Haselton, 99 Vt. 453, 134 A. 606 (1926). Although the child in Miles v. Farnsworth, 121 Vt. 491, 160 A.2d 759 (1960), was in the care of a grandparent, the custody order awarded custody to the child's father. Two recent cases have involved proceedings to award guardianship of a child to a third party because the parent is "unsuitable." Rutherford v. Best, 139 Vt. 56, 421 A.2d 1303 (1980); Guardianship of H.L., 143 Vt. 62, 460 A.2d 478 (1983).
[2] This argument fails to recognize that while the standard in determining custody is always the best interests of the child  as reflected in the statute  custody by a natural parent is presumed to be in the best interests of the child. Thus, a nonparent seeking custody must first rebut this presumption by demonstrating that the natural parent is unfit.
[3] 15 V.S.A. § 652 has been superseded by 15 V.S.A. § 665, effective July 1, 1986. For purposes of our holding, there is no relevant difference between the former statute and the current statute.
[4] Although we arrive at this conclusion based on our construction of the statute using our accepted rules of construction, we note that this definition of parent is commonly used in statutes in other states. See 4 J. McCahey, M. Kaufman & C. Kraut, Child Custody & Visitation Law and Practice § 30.01, at 30-3 (1987). In fact, the statute in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), discussed infra, defined parent in the same way as we have construed our statute. Id. at 650, 92 S.Ct. at 1212.
[5] Although the question is not directly raised in this case, it necessarily follows that in a dispute between the biological father who has established the requisite relationship with the child and the biological mother, custody must be determined based on the best interests of the child with the mother enjoying no preference solely because of her gender. See 4 J. McCahey, M. Kaufman & C. Kraut, Child Custody & Visitation Law and Practice § 30.03. Of course, the natural father must prove he is the father in a proper proceeding if paternity is disputed. See Lawrence v. Limoge, 149 Vt. 569, 546 A.2d 802 (1988). As Lawrence holds, our recently enacted parentage act represents the exclusive method of establishing paternity. See 15 V.S.A. §§ 301-306.
[6] The situation is similar to that in Myott v. Myott, 149 Vt. 573, 576, 547 A.2d 1336, 1338 (1988). As in Myott, there are no vested rights involved here  the court was determining visitation prospectively.
[7] The history of the bill in the Senate Judiciary Committee shows that the Committee was very concerned about grandparents becoming parties in the preexisting family proceedings and raising issues that would be time-consuming and expensive to try. See, e.g., Transcript of Senate Judiciary Committee, March 28, 1984, at 66-67 (statement of Senator Illuzzi).