*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-401

JULY TERM, 2013

| | |
|---|---|
| Juanita Belleville | }    APPEALED FROM: |
| | } |
| | }    Superior Court, Windham Unit, |
| v. | }    Family Division |
| | } |
| | } |
| John N. Young | }    DOCKET NO. 168-5-09 Wmdm |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Mother appeals pro se from the trial court's order granting father's motion to modify parental rights and responsibilities (PRR), and awarding him custody of the parties' three children. We affirm.

The court made the following findings. Pursuant to a September 2009 parentage order, mother and father shared legal and physical responsibilities for their children. Mother had the children during the week, while father had them on weekends. Beginning in the summer of 2011, a dispute arose between the parties regarding the children's wellbeing. Among other motions, father moved to modify PRR. In September 2011, the Department for Children and Families (DCF) filed petitions alleging the children to be without proper parental care while in mother's custody. Father was granted temporary custody of the children pending further hearings in the juvenile dockets. Parent-child contact with mother was subject to DCF arrangement and approval.

A merits hearing in the juvenile cases was set for December 2011, and the pending post-judgment motions in the parentage case, including a motion to modify PRR, were scheduled to be considered at the same time. The day before the hearing, the State dismissed the juvenile petitions. Neither parent appeared at the hearing. When the juvenile cases were dismissed, the September 2009 parentage order became the governing order, effectively vacating the transfer of custody to father. Because neither parent attended the December hearing, the court dismissed the post-judgment parentage motions as moot.

In March 2012, father moved for an emergency modification of PRR. He alleged that: mother was withholding parent-child contact from him; mother was again failing to adequately supervise the children to ensure that they attended school; mother's house was a chaotic environment unsuitable for children; and mother's mental illness was having an adverse effect on the children. Following a hearing, the court issued an emergency temporary order modifying PRR. The court then held the September 2012 hearing that led to the order on appeal.

In its order, the court found that mother was attempting to cope with a significant mental illness, which was likely untreated. It based this finding on testimony from father, mother's sister, the children's therapists, and mother's own testimony, which was characterized by significant delusional content. Most prominently, mother persistently believed that each of her children was born a twin, but that each twin had been taken illegally from her, possibly by DCF. Mother brought several suits against DCF seeking information regarding the twins' whereabouts. The children were aware of mother's beliefs. The court found that mother's apparent psychotic thought disorder was also characterized by likely auditory hallucinations that had prompted mother to summon emergency personnel to investigate intruders in her basement, despite the testimony of mother's neighbor disclaiming any suspicious noises. Both father and mother's sister believed that mother had been diagnosed with a mental illness, but they were uncertain as to the date of any diagnosis, the identity of any treatment provider, or whether mother had ever been under any prolonged period of effective treatment.

The court found that during the period that father had custody of the children he provided a much-needed structured approach to their care and guidance, particularly regarding expectations of school attendance and performance. In mother's custody, by contrast, the children frequently were absent from school or tardy. Mother's house was also extremely disorganized and chaotic. Additionally, mother denied father parent-child contact between late December 2011 and March 2012, which made the children anxious and unhappy. The court also recounted an incident in July 2012 where mother refused to open the door to father and police, who were there to retrieve the children. The children later informed father that mother had been physically holding them while the police officer was knocking, and she directed them not to answer the door or to leave.

The court recognized that mother loved the children. It concluded, however, that, without further diagnosis and treatment for her present condition, which was marked by a disordered thought process and delusional behavior, mother could not provide the necessary physical and emotional care and support for them. The court also found that the evidence raised profound questions about mother's ability to exercise any parental authority, or even participate in unsupervised parent-child contact. Mother was plainly unable to properly supervise the children's daily activities at present. More troublingly, the court continued, mother appeared to lack insight into her own mental health condition such that she could be trusted to exercise suitable judgment while in the children's presence. The court was particularly concerned about the effect of mother's delusional thinking on the children.

For these and other reasons, the court concluded that father had demonstrated a substantial and unanticipated change in circumstances, and that modification of PRR was in the children's best interests. It awarded father sole legal and physical responsibility for the children, and directed that mother's parent-child contact be supervised. Mother appealed from this order.

Mother argues that there is no basis to find a change in circumstances because there was no evidence presented regarding the onset of her mental health issues. She also asserts that the court erred in finding that she is mentally ill. According to mother, the court should have denied father's motion to modify, and ordered the children to remain with her. Mother also includes a number of allegations about father and father's new wife, apparently in support of her contention that the court erred in awarding father custody. She asserts that she had a right to counsel at the hearing, which included the right to confront witnesses at the hearing. Additionally, mother argues that father should not have been allowed to participate in a January 2013 hearing by

2

telephone. Finally, mother asks this Court to recommend that criminal charges be filed against father. This baseless allegation is unrelated to the decision on appeal and we do not address it.

As an initial matter, mother did not have a constitutional or statutory right to court-appointed counsel in this parentage action. Her reliance on the Sixth Amendment to the United States Constitution is misplaced as this was not a criminal prosecution. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." (emphasis added). We cannot evaluate mother's challenges to the court's factual findings, or her suggestion that there was insufficient cross-examination of witnesses at the hearing, because mother failed to order a transcript of the proceedings below. Our rules require an appellant to produce a transcript of all parts of the proceeding below that are relevant to the issues the appellant raises on appeal. V.R.A.P. 10(b)(1); see also V.R.A.P. 10(b)(2) (appellant must produce transcript if appellant challenges findings or evidence in support thereof). Having failed to order a transcript, mother has waived these challenges. In re S.B.L., 150 Vt. 294, 297-98 (1988); see also Appliance Acceptance Co. v. Stevens, 121 Vt. 484, 487 (1960) (appellant has burden to demonstrate error in challenged rulings below and must, therefore, produce a record that substantiates appellant's position). Mother's complaint about father appearing by telephone at a January 2013 hearing is not properly before us as that hearing was held after the decision at issue in this case. We note, however, that the trial court is authorized to allow participation by telephone. See V.R.F.P. 4(g). The court here provided a thorough explanation for its decision to grant father's motion to modify, and mother fails to demonstrate any error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

3