*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2013-397

APRIL TERM, 2014

| | | |
|---|---|---|
| In re Adoption of T.S.B. | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| | } | Civil Division |
| | } | |
| | } | |
| | } | DOCKET NO. 220-2-13 Cncv |

Trial Judge: Geoffrey W. Crawford

In the above-entitled cause, the Clerk will enter:

This case originated in the probate court where an adoption service moved to terminate the parental rights of father to his biological son, T.S.B., born in August 2012. The probate court granted termination, and father appealed to the civil division.[1] The civil division affirmed the probate court's termination of father's parental rights, concluding that father is unfit and that termination is in the child's best interests. On appeal, father argues that the court erred in considering a twenty-four year-old criminal conviction and considering evidence that does not bear on his ability to parent T.S.B. We affirm.

The court found the following facts. In 1989, when he was thirty-seven, father was married with three young children and had a sexual relationship with a fifteen-year-old girl, who became pregnant. Father was convicted of felonious sexual assault and received a three-to-six year sentence. He refused treatment while incarcerated because he did not admit the conduct. Since then, father has been convicted of failing to register as a sex offender in 2001 and of stalking in 2004. In the context of these proceedings, father admitted to altering copies of checks to make it appear that he had provided financial support to T.S.B.'s mother during the pregnancy. Father has a fifth child who visits him on weekends.

T.S.B.'s biological mother is a heroin and opiate addict. She was incarcerated nine times between May 2010 and March 2013 on drug-related charges. She met father, who is thirty-five years her senior, in 2010. For three years, she had unprotected sex with father, and, in exchange, father gave mother money to buy illegal drugs and facilitated her purchase of drugs from a dealer. When T.S.B.'s mother became pregnant, she was unsure of the child's paternity because

---

[1] This case was captioned as an adoption in the probate division. On appeal, the civil division re-captioned this case with father's name and the name of the adoption service. Now on appeal from the civil division, this Court has again captioned the case as an adoption. The parties' names are not used in this decision to maintain the confidentiality of the proceeding. See 15A V.S.A. § 3-203 (adoption proceeding in civil division confidential); Public Access to Court Records Rule 6(b)(1) (explaining that public shall not have access to records in connection with adoption proceeding).

she had multiple sexual partners at the time. She did not think father could be the father because he falsely informed her that he had undergone a vasectomy.

Mother arranged to have the child adopted through an adoption service. Mother chose the adoptive parents. The service provided mother with groceries, gas cards and medical treatment. Because of her addiction, the service did not give her cash. Father received a rental payment from the service for a two-week period when mother was staying at his house.

During the pregnancy, T.S.B.'s mother continued to use illegal drugs. Father gave mother money for drugs and bought her drugs.

When T.S.B. was born, he was very ill from the illegal drugs in his body. The prospective parents were present at the birth and remained with T.S.B. in the intensive care unit. After they left the hospital, the prospective parents cared for T.S.B. T.S.B. is closely attached to the prospective parents and their family. T.S.B. would experience trauma and hurt if separated from the parents and family he has known since birth.

Mother voluntarily relinquished her parental rights after T.S.B.'s birth.

Although father knew of the pregnancy he did not take any action until after the child was born, when he contacted the service. Father then filed a parentage action and sought custody of T.S.B.[2] A paternity test confirmed father as the biological father. The service filed to terminate father's parental rights. The probate division held a two-day hearing and terminated father's rights, finding that father did not pay for prenatal, natal or postnatal expenses and was complicit in mother's use of opiates during the pregnancy. Further, the court found that father's criminal history, including his conviction for felonious sexual assault, and his history of predatory relationships with young women made him unfit to parent.

The civil division held a de novo hearing, and made written findings. The court applied the terms of the Adoption Act, which provides that a parent's rights may be terminated if a court finds "upon clear and convincing evidence" that any one of several statutory grounds exists and that termination is in the best interest of the minor. 15A V.S.A. § 3-504(a). Those grounds include that "the respondent has been convicted of a crime of violence . . . , and the facts of the crime or violation indicate that the respondent is unfit to maintain a relationship of parent and child with the minor." Id. § 3-504(a)(3). The biological parent then has an opportunity to demonstrate compelling reasons why termination is not justified. Id. § 3-504(b).

The court can still terminate if it finds by clear and convincing evidence that the biological parent does not have the ability and disposition to "A) provide the child with love, affection and guidance; (B) meet the child's present and future physical and emotional needs; or (C) provide the child with adequate food, clothing, medical care, other material needs, education, and a safe environment." Id. § 3-504(b)(2). Or, that:

> Placing the minor in the respondent's legal or physical custody would pose a risk of substantial harm to the physical or psychological well-being of the minor because the circumstances of the minor's conception, or the respondent's behavior during the

---

[2] That case was eventually voluntarily dismissed because of a pending action in New Hampshire, where T.S.B. was born. Eventually, the New Hampshire case was dismissed in favor of the probate action from which this appeal arises.

pregnancy or since the minor's birth indicates that he or she is unfit to maintain a relationship of parent and child with the minor.

Id. § 3-504(b)(4).

The best interests of the child are determined by the following criteria:

(1) the likelihood that the respondent will be able to assume or resume his or her parental duties within a reasonable period of time;

(2) the child's adjustment to his or her home, school, and community;

(3) the interaction and interrelationship of the child with his or her parents, siblings, and any other person who may significantly affect the child's best interests; and

(4) whether the parent or alleged parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.

Id. § 3-504(c).

In a written order, the court found three bases to terminate father's parental rights. The court found that father's felony sexual assault conviction qualifies under § 3-504(a)(3) as a crime of violence and that the facts of the crime demonstrate father is unfit to parent T.S.B. The court also found that under § 3-504(b), father had failed to show there were not compelling reasons why termination was not justified on that ground. The court found that father's excuse that the victim of his sexual assault appeared older was not a justification. Further, although the court acknowledged the passage of time since the conviction, the court found that father had "learned little from his conviction and has continued to engage in manipulative and illegal behavior in order to obtain sex from young women."

The court also found that under § 3-504(b)(2) there were separate grounds to terminate because father is unable to provide T.S.B. with a safe environment. The court explained that it was highly likely that father's "patterns of behavior of obtaining sex from underage or addicted girls and young women will continue." Finally, the court found that under § 3-504(b)(4), father's conduct of supplying drugs to mother during her pregnancy put T.S.B. at risk, and was unlikely to change. The court noted that father supplied these drugs to mother while exercising parent-child contact with his fifth child. The court weighed the statutory factors and concluded that termination was in T.S.B.'s best interests.

On appeal, father first raises arguments relating to his sexual assault conviction. He argues that because the conviction was a long time ago, it should not have been admitted, and should not reflect on his current ability to parent. He also contends that sexual assault is not a crime of violence for purposes of § 3-504(a)(3).

We do not reach father's arguments that his felony conviction does not qualify as a crime of violence under the Adoption Act or that he demonstrated compelling reasons why it should

3

not apply because even if termination is not justified under that section, the court found that termination was warranted separately under § 3-504(b)(2) due to father's inability to provide a safe environment, and § 3-504(b)(4) based on father's actions of placing T.S.B. in danger during the pregnancy.

Father next argues that several of the court's findings, including those related to the sexual assault, father's fitness to parent T.S.B., and T.S.B.'s best interests, were based on hearsay or were not supported by the evidence. The adoption service contends that father failed to provide a transcript of the proceeding and therefore cannot challenge the sufficiency of the findings. The service further argues that the court's findings are supported and not in error.

The party seeking relief from this Court has the burden on appeal to demonstrate the existence of error. In re S.B.L., 150 Vt. 294, 297 (1988). If the party claims a finding or conclusion lacks evidentiary support or is contrary to the evidence, the party must provide this Court with a transcript of all evidence relevant to the finding or conclusion at issue. V.R.A.P. 10(b)(1). Because father failed to produce a transcript or apply for one under our rules, we must assume that the court's findings are supported by the record. V.R.A.P. 10(b)(1) ("By failing to order a transcript, the appellant waives the right to raise any issue for which a transcript is necessary for informed appellate review."). Therefore, we accept as true the court's findings, including that: father provided mother with drugs during her pregnancy in return for sexual favors; father showed little awareness of the seriousness of his conduct or the harm it caused the baby; father continues to engage in manipulative and illegal behavior to obtain sex from young women; and father allowed illegal drug use in his home. The court's findings are sufficient to support its conclusion that father is unfit to parent T.S. B. because he is unable to provide a safe environment for T.S.B. and his behavior during the pregnancy put T.S.B. at risk of substantial harm. See In re K.M.M., 2011 VT 30, ¶ 14, 189 Vt. 372 (explaining that conclusions will stand if supported by findings). The findings also support the court's conclusion that termination is in T.S.B.'s best interests.

On a final note, the adoption service moves to strike additional evidence offered by father on appeal and not part of the record below. Because father failed to order a transcript, we cannot determine what is new evidence and what was presented in the superior court. The consequence of that failure is the main ground for our decision, and we do not need to rule on the motion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice

4