VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        23-AP-306



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2024

| | | |
|---|---|---|
| In re Kurt Daims/Brattleboro Common Sense* | } | APPEALED FROM: |
| | } | |
| | } | Board of Health |

In the above-entitled cause, the Clerk will enter:

Appellants appeal pro se from the issuance of a Health Order by the Vermont Board of Health.  The Board found that several recreational vehicles (RVs) located on property owned by appellant Kurt Daims and leased to appellant Brattleboro Common Sense, Inc., were in violation of various health and fire-safety codes.  The Board prohibited appellants from allowing anyone to occupy the RVs until certain requirements were satisfied.  We affirm.

The record indicates the following.  Kurt Daims owns real property in Brattleboro, Vermont.  He is an officer in a nonprofit corporation called Brattleboro Common Sense, Inc.  The corporation's directors decided to purchase RVs to provide temporary emergency shelter to those without housing and they placed three RVs on land owned by Mr. Daims.  Various complaints were filed and the town board of health issued an Emergency Health Order.  Appellants appealed this decision to the Vermont Board of Health, which considered the matter de novo.  Following two days of hearings, the Board issued the Health Order now on appeal.

The Board made numerous findings, including the following.  Three RVs were placed on Mr. Daims' land in late 2022 pursuant to a lease with Brattleboro Common Sense, Inc.  They were made available to those in need of emergency shelter.  Appellants did not obtain any wastewater permits, water-supply permits, electrical permits, mobile-park permits, or any other state or local permit for the project or the RVs.  Nearby residents complained to town officials about public urination and unsafe electrical issues creating potential fire hazards.

In February 2023, the town health officer and the assistant fire chief inspected the property and the RVs.  The health officer found the RVs "dangerous to the life and health of any occupant" and determined that they created "a public-health hazard."  He identified numerous deficiencies that violated the National Fire Protection Association Code, the Vermont Residential Rental Housing Health and Safety Code, and the town's municipal ordinances.  The violations included, among other things, blocked windows, the absence of potable or running water connected to any unit, the absence of fire extinguishers, damaged or inoperable windows, the absence of indoor toilet facilities in two of the RVs, no public or private sewer connections or sewage-disposal system, and the use of extension cords for electricity in the units, which posed a

fire hazard. The health officer testified to these deficiencies during the hearing before the Board, and his testimony generally tracked the results of his inspection. The health officer also testified that Mr. Daims told him that the tenants of the RVs were charged rent at one time but now each occupant performed work on the property. The Board credited this testimony. The health officer also indicated that he found evidence of human feces and toilet paper on the property and in the trash can, which he considered evidence of unsanitary conditions. The Board found that the problems identified by the health officer in early February 2023 remained substantially unresolved.

The Board rejected appellants' assertion that "procedural violations" in the emergency health order rendered the order "illegitimate and unenforceable." The Board explained that the validity of the initial Emergency Health Order was not at issue as the Board was considering the matter de novo. Even if the prior order was up for review, the Board continued, the fact that the order did not advise appellants of the availability of a review within five days was not a defect that would invalidate the order. It found this particularly true given that no enforcement of the Emergency Health Order was initiated and the town board of health held a full hearing on the issue at which appellants were represented.

The Board also rejected appellants' assertion that the Vermont Residential Rental Housing Health and Safety Code did not apply because of the project's unique nature and the absence of cash rent. The Board explained that the code applied to "all rented dwellings, dwelling units, rooming houses, rooming units, and mobile home lots used as a regular residence." Residential Rental Housing Health & Safety (RRHHS) Code § 3.1, https://firesafety.vermont.gov/sites/firesafety/files/documents/RRHHS%20Code%202022%20.pdf [https://perma.cc/2QJ4-A2FR]. The Board found the definition of "rooming house" and "rooming unit" sufficiently broad to encompass the RVs here. It noted that appellants did not appear to contest the application of the town's Health, Sanitation and Fire Safety Code or the National Fire Prevention Association Code to the RVs. The Board found eight violations and issued an order prohibiting occupancy of the RVs until the town health officer inspected them and certified that each unit satisfied the requirements of the various fire and health codes. This appeal followed.

At the outset, we emphasize that the Board's order is the only decision before us in this appeal. We are not in this appeal reviewing the zoning decision or preliminary injunction ruling referenced by appellants.

Appellants challenge many of the Board's findings as unsupported by the evidence. Appellants did not order a transcript of the proceeding before the Board, however, and they did not seek nor were they granted permission to use a digital audio recording in lieu of a written transcript. See V.R.A.P. 10(b)(8). Appellants filed a statement with the Court that no transcripts were necessary for the appeal. Without a transcript, we assume that the Board's findings are supported by sufficient evidence. See V.R.A.P. 10(b)(1) ("By failing to order a transcript, the appellant waives the right to raise any issue for which a transcript is necessary for informed appellate review."); In re S.B.L., 150 Vt. 294, 307-08 (1988) (explaining that appellant bears consequences of failing to order transcript and without transcript Supreme Court assumes that evidence supports findings made below). We thus do not address appellants' arguments that the Board's findings are unsupported by substantial evidence in the record. This includes the Board's assessment of the credibility of various witnesses and its assessment of the weight of the evidence, which are matters solely for the factfinder to resolve. See, e.g., Cabot v. Cabot, 166 Vt. 485, 497 (1997) (recognizing that it is for "trier of fact . . . to determine the credibility of the

witnesses and weigh the persuasiveness of the evidence"). The Board's findings are controlling here.

We similarly do not address appellants' assertion that they were not given an adequate opportunity to present their case during the two-day hearing because "[a] transcript is necessary for informed appellate review." V.R.A.P. 10(b)(1); see S.B.L., 150 Vt. at 307; see also V.R.A.P. 28(a)(4)(A) (explaining that appellant's brief must include "the issues presented, how they were preserved, and appellant's contentions and the reasons for them--with citations to the authorities, statutes, and parts of the record on which the appellant relies").

For the same reason, we deny the motion to vacate, which appellants filed during the pendency of this appeal. The motion is apparently premised on Vermont Rule of Civil Procedure 60(b)(4). Appellants filed a motion below, labeled as a motion to reopen the evidence, essentially asking the Board to reconsider evidentiary rulings made at the hearing. The presiding officer denied the request in a written decision. Appellants now assert that the Board, rather than the presiding officer, should have denied their motion to reopen the evidence, and that, due to this alleged error, the Health Order is void.

As an initial matter, Rule 60 motions are not properly filed in this Court. Nor can we discern without a transcript what occurred at the final hearing in this matter. See Dep't of Health Hearing Rule, Rule 7.4.6, Code of Vt. Rules 13 140 009 https://www.healthvermont.gov/sites/default/files/documents/pdf/BOH%20Hearing%20Rule%20Clean.Final%20Adopted.pdf [https://perma.cc/N6X3-9SM3] ("If the hearing has not concluded, either party may request to reopen the evidence for good cause. The Board shall make the determination as to whether the evidence shall be reopened." (emphasis added)). It is also not apparent that appellants raised this argument below. For these reasons alone, we deny appellants' motion to vacate. Even if it was appropriate to file a Rule 60 motion with this Court, we would deny the motion. The last day of the hearing was July 11, 2023, following which the parties were directed to submit proposed findings based on the evidence submitted. Appellants did not file their motion until July 27, 2023, after the town filed its proposed findings and conclusions. It is evident that, by this point, the evidentiary hearing had concluded. It would make no sense to file proposed findings if the evidence remained open. In any event, appellants fail to support their assertion that the denial of their motion by the presiding officer, on the merits in a written decision, warrants vacating the underlying Health Order. In their motion, appellants simply sought reconsideration of evidentiary rulings made by the hearing officer during the hearing, arguments that were considered on the merits and rejected. The decision preceded the issuance of the Board's Health Order and the Board was presumably cognizant of and in agreement with the presiding officer's ruling.

We thus turn to appellants' remaining arguments to the extent they can be discerned. The Board did not err in concluding that any alleged errors in issuance of the Emergency Health Order were irrelevant given that the Board conducted a de novo hearing. It did not err in concluding that appellants violated the Residential Rental Housing Health and Safety Code or that they violated various other code provisions. The RVs are on property leased to Brattleboro Common Sense, Inc., by Mr. Daims. They are offered as housing. The residents paid rent money at one time, but this practice was stopped after several weeks. Occupants were expected to follow the general directions explained to them upon moving into the units; they were expected to do basic clean-up at the property and allow inspections. They could be asked to leave the unit "at will." The Board found that several occupants had lived in the RV units from January 2023 to the date of the hearing before the Board.

Appellants argue that the RVs should not be subject to the code because they are not a "regular residence." See RRHHS Code § 3.1 ("This Rental Housing Health and Safety Code shall apply to all rented dwellings, dwelling units, rooming houses, rooming units, and mobile home lots used as a regular residence."). We agree with the Board that the RVs should be considered regular residences and that appellants must comply with the code here. The RVs were offered to community members as living units. They fit within the definition of "rooming units." See id. § 4.20 (defining "rooming unit" as "room or group of rooms let to an individual or household for use as living and sleeping, but not for cooking or eating purposes, whether or not, common cooking facilities are made available"); id. § 4.19 (defining "rooming house" as "any dwelling or part thereof containing one or more rooming units and/or one or more dormitory rooms in which space is let by the owner or operator to one or more persons who are not immediate family members of the owner"). The rules do not restrict the term "rent" to money paid, and the facts here establish that the tenants offer consideration for their occupancy through the obligation that they clean up the property. See 9 V.S.A. § 4451(7) (defining "rent" to mean "all consideration to be made to or for the benefit of the landlord under the rental agreement, not including security deposits"); id. § 4451(8) (defining "rental agreement" to mean "all agreements, written or oral, embodying terms and conditions concerning the use and occupancy of a dwelling unit and premises"). It is appropriate that these RVs, offered as living units to members of the community in exchange for obligations imposed upon the occupants, satisfy the basic requirements of the code. See RRHHS Code § 2 (explaining that code serves "to protect the health, safety, and well-being of the occupants of rental housing," and "[t]hese rules in combination with the currently adopted Vermont Fire and Building Safety Code, establish[] minimum safety, health and habitability standards that all residential rental housing in Vermont must conform to"). We have considered all arguments properly presented, adequately briefed, and discernable in appellants' brief and find them all without merit. The Board did not err in issuing the Health Order.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice