*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-444

JULY TERM, 2015

| | | |
|---|---|---|
| In re Guardianships of D.B., T.B., and B.B. | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| | } | Civil Division |
| | } | |
| | } | DOCKET NO. 52/53/54-1-14 Wrpr |

Probate Judge: Joanne M. Ertel

In the above-entitled cause, the Clerk will enter:

Parents appeal an order of the probate division granting grandparents' petition to be appointed custodial guardians of minors D.B., T.B., and B.B. We affirm.

This case began in the family division. In December 2009, the State filed a petition alleging that parents' three children, who were then age four, two and one, were in need of care or supervision (CHINS) for lack of proper parental care. Pursuant to an emergency-care order, the family division granted custody to the Department for Children and Families (DCF). The children were initially placed in foster care, and then were placed with grandparents in April 2010 under a conditional-care order. In August 2011, the family division issued an order vacating the conditional-care order with the agreement of all parties, and stating: "Legal guardianship with grandparents." In June 2013, parents filed a motion requesting custody of the three children, and effectively seeking to terminate the guardianship with grandparents. Following a hearing, the family division issued an order in December 2013. The court continued custody of the children with grandparents, but questioned whether a legal guardianship had been created since no action had been taken in the probate division.[1]

A proceeding to have grandparents appointed guardians for the minor children was commenced in the probate division. Following a hearing, the court found the following by clear-and-convincing evidence. The children lived with parents in grandparents' home from 2007 to 2009. During that time, parents fought verbally and physically in front of the children. Mother verbally abused the children, calling them foul and vulgar names. Mother also slapped one child and beat another on the chest. Mother inappropriately touched the children, pulling her son's penis foreskin and putting her finger in the children's anuses to clean them to the point where the children would scream. Parents left grandparents' home with the children in October 2009 after

---

[1] At the time, the probate division had sole jurisdiction over minor guardianship proceedings. 14 V.S.A. § 2645. In 2014, the statute was amended. 2013, No. 170 (Adj. Sess.), § 6 (repealing 14 V.S.A. § 2645). Under the amended statute, the probate division has exclusive jurisdiction over proceedings involving guardianship of minors, except that the proceeding can be transferred to the family division under certain circumstances. Id. § 1, codified at 14 V.S.A. § 2624 (allowing transfer of minor guardianship to family division).

mother was charged with assaulting father's brother's girlfriend, who also lived in the home. Mother was eventually convicted of domestic assault.

After the CHINS petition was filed in 2009, DCF attempted to work with parents, but parents made very little improvement. Mother minimized her domestic violence, was explosive and would not work with a parent educator. Father was more cooperative, but also did not progress in his parenting skills. Both parents used extremely foul language.

Parents failed to cooperate with the agency providing supervised visitation, and last had contact with the children in January 2014. The children have adjusted well to living with their grandparents, who have a warm and loving relationship with the children. Each child has an individualized education plan at school. Grandparents read with them, and help them with homework.

In determining whether these findings were sufficient to support a guardianship, the court acknowledged that the relevant statute had been amended after the petition was filed but before the final hearing. Under the prior statute, a minor guardianship could be created if the parent was "incompetent or unsuitable to have the custody of the person of the minor." 14 V.S.A. § 2645(2), repealed by 2013, No. 170 (Adj. Sess.), § 6, effective September 1, 2014. This Court interpreted the language "unsuitable" in the statute to require a showing that "the child has been abandoned or abused by the parent, or that the child is without proper parental care or subsistence, education, medical, or other care necessary for his well-being before a parent's rights can be defeated." Rutherford v. Best, 139 Vt. 56, 61 (1980) (citation omitted). This is the same standard for adjudicating a child as CHINS. The amended statute essentially incorporates this standard, defining a "child in need of guardianship" as one who, among other things, is abandoned or abused or lacks "proper parental care, subsistence, education, medical, or other care necessary of the child's well-being." 14 V.S.A. § 2622(2)(B)(i), (ii).

The court concluded that under either standard, grandparents had met their burden of demonstrating by clear and convincing evidence that the parents are unsuitable, and that a guardianship was in the children's best interests. Parents appeal.

We need not reach the question of whether to apply the amended statute, because we agree with the probate court that under either standard the outcome is the same. The new statute essentially adopted the existing legal standard, specifying that, like in a CHINS proceeding, a child is in need of guardianship if, among other things, the child has been abused or is "without proper parental care, subsistence, education, medical, or other care necessary for the child's well-being." Id.[2]

Parents' first claim appears to be that some of the court's findings are not supported. On appeal, we defer to the findings of the factfinder and will not reverse unless those findings are clearly erroneous. In re K.M.M., 2011 VT 30, ¶ 14, 189 Vt. 372. Even if contrary evidence exists, we uphold the trial court's findings "if they are supported by credible evidence." Id. Insofar as parents argue that witnesses were lying and therefore the findings are incorrect, the credibility of the witnesses and weight of the evidence is to be determined by the trial court and we will not reexamine the evidence on appeal. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995).

_____

[2] We note that the procedural aspects of the new statute are being applied to this appeal insofar as this direct appeal from the probate division is a new procedure adopted by the amended statute. See 14 V.S.A. § 2633 (granting Supreme Court jurisdiction over probate orders issued in guardianship proceedings).

2

Further, some of parents' arguments relate to the CHINS proceeding that occurred in the family division. The CHINS determination is a final order, and the procedures in the family division are not part of this appeal. Therefore, we do not address these issues.

To the extent we can discern parents' other arguments, we address them. Parents argue that there was no substantiation of abuse based on mother's treatment of the children and imply that therefore testimony about abuse by mother should not have been considered by the probate court. The probate court did not err in considering mother's actions. Whether these actions were abuse that warranted substantiation is a separate question from whether mother's actions exhibited lack of proper parental care. See In re M.K., 2015 VT 8, ¶ 11 (declining to adopt in CHINS context definition of abuse in statute relating to substantiations).

Parents also appear to argue that the court erred in finding that parents failed to make arrangements for visitation with the third-party organization because it was due to matters beyond parents' control. The court considered all of the evidence offered concerning the arrangement of visitation and concluded that the visits ended "because parents refused intake." The record supports the court's finding. The organization director testified that she spoke with parents on the phone to arrange an intake, but they refused to set up the appointment, and did not follow through. Therefore, the finding was supported and there was no error.

Parents also contend that they have adequate parenting skills and this is demonstrated by the fact that they are currently parenting their youngest child. The court did not err in concluding that the fact parents are parenting one young child is not particularly probative of whether their older children are in need of a guardian. The facts related to the three older children are different from those related to the youngest child. All the older children have special needs and have been victims of and witnesses to domestic violence. The court found that parents lack the necessary parental skills to care for these children and have "demonstrated unwillingness" to learn new skills. They are verbally abusive, use foul language, and show little insight into the impact of how their verbal abuse and the domestic violence in the home affected the children. Further, parents do not cooperate with social services, and, at the time of the final hearing in September 2014, had not seen the children since January 2014. In sum, these findings support the court's decision that the children were in need of a guardian due to lack of proper parental care, and therefore there are no grounds to disturb the guardianship order.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

3